**STONE v. CHICAGO, M., ST. P. & P. R. CO.**

No. 9180.

Circuit Court of Appeals, Eighth Circuit.

Nov. 18, 1931.

J. A. Hanley and Glenn D. Kelly, both of Davenport, Iowa, for appellant.

John N. Hughes, Willis O'Brien, and Stanton S. Faville, all of Des Moines, Iowa, and James J. Lamb, of Davenport, Iowa, for appellee.

Before KENYON and GARDNER, Circuit Judges, and REEVES, District Judge.

GARDNER, Circuit Judge.

In this case the appellant, as executrix of the estate of her husband, Henry Clifford Stone, seeks to recover from the appellee, Chicago, Milwaukee, St. Paul & Pacific Railroad Company, $30,000, as damages on account of the death of her husband, resulting from a collision between the automobile which he was driving and a train of the appellee, at a highway crossing near Princeton, Scott county, Iowa. The petition charged the defendant with negligence in (1) the maintenance of the highway crossing; (2) failure to sound warning signals; (3) failure to exercise ordinary care to stop after discovering plaintiff's decedent in a position of danger; and (4) failure to keep a proper lookout, and failure to stop in time to avoid the accident. Defendant answered, denying generally the allegations of the pe-

tition, and pleading that the negligence of the deceased caused his injury and death.

Plaintiff offered evidence showing the location of the railway crossing, the condition of the crossing where the tracks crossed the highway, the view at that point, including the angle of crossing, the rise in the grade of the highway where it passes up to the railroad crossing on either side, and a general description of the appearance and relative location of other structures or objects.

The accident happened on the 25th of July, 1929, between 7 and 8 o'clock p. m. It was daylight, the weather was clear, and there were no other automobiles or vehicles on the highway in that immediate vicinity. Decedent was an experienced driver of motor vehicles, familiar with the crossing, and there were no diverting circumstances. The highway at this public crossing runs north and south, while the railroad runs northwesterly and southeasterly. The deceased was driving his automobile north, while the train with which he collided was passing southeast.

The court denied motion of the defendant for a directed verdict and sent the case to the jury upon the evidence introduced in support of the allegations of negligence, but in its charge limited the jury to the question of negligent maintenance of the crossing and the question of decedent's contributory negligence. No exceptions were taken by the appellant to the instructions as given by the court, and upon the issues submitted the jury returned a verdict for the defendant.

■■■ On this appeal it is urged that the court committed prejudicial error in its rulings on the admission and exclusion of evidence. The defendant offered in evidence photographs identified in the record as Exhibits A, B, C, D, E, and F, reflecting views of this crossing taken from different locations. Plaintiff's testimony in chief had described the crossing and its alleged condition at the time of the accident. The photographs were taken the day following the accident and were verified or authenticated by the photographer who took them, and they were further verified by the testimony of other witnesses familiar with the physical condition of the crossing and the objects purported to be reflected by the photographs. The photographer described the camera, its location at the point from which each picture was taken, and the direction of the camera. He testified with reference to each picture that it fairly represented the physical situation as it existed at the time it was taken. The pictures are embodied in the record, and

to some extent at least speak for themselves. They were "objected to on the ground that they are not a fair representation of the condition at that time; that the crossing doesn't show the depressions, doesn't show the angle of the track properly, and there has been no evidence to show that it was in that condition on the day of the accident." The court overruled this objection which was interposed to each of the exhibits, and they were admitted in evidence.

The proof showed that the photographs were taken on the day immediately following the accident and that the physical condition of the crossing had not substantially changed. As photographs of the scene of the accident, they were admissible in evidence if properly authenticated, as a representation of the locality and its surroundings. The question of the sufficiency of the preliminary proofs to identify the photographs and to show that they were a fair and accurate representation of the objects or locality which they purport to reflect, was a question committed to the discretion of the trial judge. The proof required of the accuracy of a photograph varies with the nature of the evidence it is offered to supply. Here they were offered as a general representation of the crossing and surrounding physical conditions, as to which testimony had already been adduced; in fact, at least two of these photographs had been identified by plaintiff's witnesses on cross-examination. They were not only a convenience for witnesses in explaining their testimony, but they were demonstrative evidence going to the physical situation of this crossing as it existed at the time of the accident, and were an aid to the jury in applying the testimony of the witnesses produced. There was clearly no error in overruling plaintiff's objections to these photographs. Denver, etc., R. Co. v. Roller (C. C. A.) 100 F. 738, 49 L. R. A. 77; Gose v. True, 197 Iowa, 1094, 198 N. W. 528; Faatz v. Sullivan, 199 Iowa, 875, 200 N. W. 321; Diller v. Power Co., 162 Cal. 531, 123 P. 359, Ann. Cas. 1913D, 908.

■■■ Plaintiff, after the defendant had rested, offered certain testimony as rebuttal. The first witness offered in rebuttal, Walter Jacob Rudolph, testified that he saw the crossing the next evening after the accident; that it had been filled in that day some time with dirt and cinders between the rails; that it was "in good condition then, along side of what it was before the accident"; that he had passed over the crossing fifteen minutes before the accident and it was not filled

in at that time. He then testified that about half an hour prior to the accident he had passed over it, and he was then asked: "Q. Do you remember what the condition was at that time?" This was objected to as not proper rebuttal, and the objection was sustained.

The witness Robert Suiter testified that he had passed over this crossing more than a week before the accident, and he was then asked: "Q. How did you have to cross the crossing at that time, with reference to where the wheels hit the rail?" This was objected to as not proper rebuttal, and the court in sustaining this objection said: "This was all gone over in your main case."

The witness was then asked: "Q. When you went over it two weeks prior, or a week prior, just tell the jury what condition the track crossing was in." This was objected to as not proper rebuttal, and the objection sustained. The following then occurred:

"Q. I am going to ask about a view of the track.

"The Court: You mean how far you could see up the track?

"Mr. Kelly: Yes.

"The Court: You went over that in your original case.

"Mr. Kelly: They have introduced evidence as to the view; that is the reason I was introducing it.

"The Court: Sustained."

The witness was also asked:

"Q. I will ask you whether or not you have recently made any experiments on that crossing to determine where a car can be seen from up the track and also from the distance below the end of the hedge that you can see and observe up the track.

"Mr. O'Brien: Objected to as immaterial; not proper rebuttal.

"The Court: It isn't rebuttal; you asked your witnesses how far they could see and then these other people showed by these people how far they could see. You can't go into it again. You did that and they put their witnesses back and go over this again and again, there never would be any end. The law says each side has the right to introduce their evidence about those things and then we quit."

Counsel for plaintiff then offered to prove the result of the experiment made by the witness, and this was objected to and the objection sustained. All the rejected evidence offered on rebuttal related to the condition of the crossing prior to the accident, the view of the track, and the angle of the crossing.

Plaintiff alleged as one of the grounds of negligence failure to exercise reasonable care to stop after discovering decedent in a position of danger, and also failure to keep proper lookout and stop in time to avoid the accident. The evidence offered in rebuttal was clearly a part of plaintiff's main case on these issues. Plaintiff should have introduced all his evidence in chief in the first instance, and not reserve a part of it for rebuttal. Rebuttal testimony should be directed to a rebuttal of the testimony brought out by the defendant. The rule requires that plaintiff must try his case out when he commences, and cannot divide up his evidence so as to give part of it in chief and hold back part of it for rebuttal. True, the court may, in its discretion, admit in rebuttal evidence which properly should have been introduced in chief, but any relaxation of the rule is an appeal to the sound discretion of the court. Kimbro v. Moles, 175 Iowa, 528, 157 N. W. 181; Erie R. Co. v. Kennedy (C. C. A.) 191 F. 332; Wilmoth v. Hamilton (C. C. A.) 127 F. 48; Marande v. Tex. & P. R. Co. (C. C. A.) 124 F. 42; Light v. Toledo, etc., R. Co. (D. C.) 208 F. 158. The testimony offered in rebuttal was as available when the plaintiff put in her testimony in chief as it was later in the trial. There was nothing to appeal to the court's discretion, and the exclusion of the testimony was not error. The proffered evidence as to the result of the witness' experiments related primarily to issues which were not submitted to the jury because there was not sufficient evidence to sustain them. The court submitted but one question of negligence, that of "the negligent maintenance of the crossing," and no exception was taken to the submission of this issue, or the failure to submit any of the other issues stated in plaintiff's petition. Confessedly, the plaintiff had not in her evidence in chief created a jury issue on these questions, and she was not entitled so to do on rebuttal.

[■■] Claude Oakes, called as a witness on behalf of the defendant, testified that he was a farmer; that he had lived in the vicinity of this crossing about fourteen years and was familiar with the general situation at the crossing; that he frequently used the crossing and passed over it a few days prior to the accident; that the Exhibits A, B, C, D, E, and F were pictures of the crossing, and "are about the same as the situ-

ation existed as I observed it at and prior to the time of the accident." He then testified that approaching the crossing from the south, directly before reaching the tracks, there was a three-foot rise in about forty or forty-five feet, and as you approach the railroad crossing going north on the highway, there is a hedge on the left side of the road; that south of the left-hand side this hedge runs to within about fifty feet of the track. He also testified: "There is no hedge or growth of any kind that would obstruct the view of a person on the highway between the point where the hedge ends and the railroad tracks and from the end of the hedge you could see a quarter of a mile left up the railroad tracks. The view up the tracks would increase from that point as you traveled the fifty feet to the track."

He was cross-examined without objection with reference to the exhibits and the space between the hedge and the track, the grade, the elevation, and the angle at which the highway crossed the railroad track. On cross-examination he also, without objection, testified: "From the end of the hedge I figure there fifty feet from the railroad track. You can see a quarter of a mile up the track. The track there runs along angling to the west. I didn't notice that if you were back down south of the crossing 150 feet, you could still see up the track about 700 feet. You could be back of the hedge a little ways and see up the track too, but not too far back. You could not be very far back and see up the track 700 feet. The hedge would hinder the view a little; if you get too far back you can get a ways back and see a ways. You can get a little farther back than the end of the hedge back south and still look up the track. The hedge does not obstruct the view so much because of the fact that the railroad track runs north and south practically, a little bit to the west. If you are not too far back the end of the hedge itself doesn't necessarily obstruct the view of a person driving to the north when they are still south of the end of the hedge. I couldn't say offhand how far back that would be."

The witness was then asked the following question: "And isn't it also true, if you were up the track looking down towards the road, that you could see much further than the end of the hedge, you could see a car much further than that if the car was to the south of the end of the hedge on the right hand side of the road?"

This was objected to as not proper cross-examination, and the objection sustained.

In the federal courts, the cross-examination of witnesses is limited to the matters embraced in the examination in chief, subject to certain exceptions not here important. Heard v. United States (C. C. A.) 255 F. 829; Kettenbach v. United States (C. C. A.) 202 F. 377; Illinois Central R. Co. v. Nelson (C. C. A.) 212 F. 69; Minnesota & Ontario Paper Co. v. Swenson Evaporator Co. (C. C. A.) 281 F. 622.

The subject of the direct examination seems to have been quite fully covered on cross-examination, without objection. It is not always easy to determine what is within and what is without the scope of the direct examination, and therefore much must be left to the sound discretion of the trial court in determining what is proper cross-examination. The question asked was in the nature of a cross-examination of certain matters brought out by counsel on cross-examination, rather than a cross-examination on any matters brought out on direct examination. There is, however, a further reason why the exclusion of this testimony should not work a reversal of this case.

The question, it will be observed, had no possible bearing upon the condition of the crossing. It called for testimony which might have had some bearing upon the alleged negligence in the operation of the train. However, this question was, under the instructions of the court, taken away from the jury because plaintiff had not introduced sufficient evidence to raise an issuable fact. There was no exception to the court's instructions, so that it stands admitted that there was no substantial evidence offered by the plaintiff to sustain that issue. The plaintiff could not, by cross-examination, supply the evidence necessary to establish her case. The proper time for such evidence was when she was proving her case. As this proffered evidence had no relation to any issue submitted to the jury, its exclusion was not prejudicial.

The record discloses no prejudicial error, and the judgment is therefore affirmed.