## LINDBACK v. MILTER.

### No. 5232.

Circuit Court of Appeals, Third Circuit.

April 12, 1934.

DAVIS, Circuit Judge, dissenting.

Rawle & Henderson, of Philadelphia, Pa. (Rutledge Slattery, George M. Brodhead, Jr., and Joseph W. Henderson, all of Philadelphia, Pa., of counsel), for appellant.

Wayland H. Elsbree, Thomas Raeburn White, and Samuel Scoville, Jr., all of Philadelphia, Pa., for appellee.

Before WOOLLEY, DAVIS, and THOMPSON, Circuit Judges.

WOOLLEY, Circuit Judge.

This suit is on a written contract between the parties wherein, as the plaintiff construes it, the defendant engaged to pay him a salary through a term of years as manager in the manufacture and sale of a certain product. Confessing the contract, the defendant construes it as a mere convenience, or a "conduit," entered into until he (the defendant) should determine what corporation (a new one to be organized for the purpose or an old one conveniently available) should make and sell the product and, accordingly, until the corporation, so selected, should take over the written contract and assume the obligation to pay the plaintiff's salary; maintaining further, as matter of fact, that the contract was, by an oral agreement between the parties, adopted by a new corporation and the promise to pay the plaintiff's salary assumed by it, to the release and discharge of the defendant. The plaintiff denied the alleged oral agreement and, standing on the written contract alone, had a verdict. From the judgment the defendant appealed.

Stating the case more in detail, Charles Milter and C. R. Lindback, to whom we shall refer as plaintiff and defendant, respectively, entered into an arrangement whereby the plaintiff agreed to develop and, if possible, bring to commercial production a powdered milk, similar in character to mother's milk. When, after about a year's work, the plaintiff had developed a process for the milk, the parties entered into a written contract for its exploitation whereby the plaintiff (paragraph 1) agreed to deposit the secret formula with the defendant who in turn agreed to organize a corporation for the manufacture and sale of the milk or to arrange with Abbotts Alderney Dairies, Inc. (of which he was president) to undertake its manufacture and sale (paragraph 2). The defendant further agreed (paragraph 4) that he, or a corporation to be organized by him, or Abbotts Dairies, or whoever should by his direction manufacture and sell the powdered milk, should pay a royalty to the plaintiff. Down to this point everything is simple.

Paragraph 6 provides that: "Said Milter (the plaintiff) further agrees to enter the service of said Lindback, (the defendant) or of the corporation to be organized or of Abbotts Alderney Dairies, Incorporated, as above set forth, and to act as General Manager in the manufacture and sale of said product and he shall be paid therefor the sum of Fifty Dollars ($50.00) per week in addition to royalties. * * *"

Paragraph 7 provides: "This agreement shall remain in full effect for the term of seventeen (17) years from the date of its execution and shall extend to and bind the executors, administrators, successors and assigns of the parties hereto."

The defendant caused a corporation to be organized, which embarked upon the manufacture and sale of the milk product. It paid the plaintiff's weekly salary. After a time the venture failed. The plaintiff being out of a job sued the defendant on the contract for his salary in the future. The defendant, in his affidavit of defense, pleaded as new matter, somewhat in the nature of confession and avoidance, the oral contract referred to and the assumption of the written contract including payment of the plaintiff's salary by the newly formed corporation.

On this appeal, the defendant contends there is uncertainty or obscurity in the latter part of paragraph 6 as to who should pay the salary, Lindback (the defendant), or the corporation to be organized, or Abbotts Dairies, and that the trial court should have construed it as matter of law. When the case came to trial the defendant did not call upon the court, by his points or anywhere else that we can find, to construe the claimed obscure provision of the written contract as matter of law with an offer to rest his case upon such construction but, to sustain the new matter which he had pleaded in his affidavit of defense, offered and was permitted to introduce in evidence an alleged oral contract to exonerate himself from liability. Of course the learned trial judge probably had in mind the general rule that: "where a contract is to be construed by its terms alone, it is the duty of the court to interpret it; but where its meaning is obscure, and its construction depends upon other and extrinsic facts in connection with what is written, the question of interpretation should be submitted to the jury under proper instructions." 6 R. C. L. p. 862; Foster v. Berg & Co., 104 Pa. 324, 328.

The court might of its own motion have construed the contract, but if its failure to do so constituted error it was error imposed upon the court by the defendant himself as to which, of course, he did not note an exception and of which he cannot avail himself on appeal. As we have said, the court, upon the defendant's insistence and over the plaintiff's objection, let in evidence of a change in or an interpretation of the written contract by an oral agreement so as to shift liability for payment of the salary from himself to the corporation. It may be that under the pleadings the evidence was properly admitted. However, it is plain, both from the pleadings and the evidence, that the defendant endeavored to prove against the plaintiff's contradiction that the alleged oral contract showed the real contract between the parties which was different from, or was an interpretation of, the written one. That involved a question on a disputed issue of fact: What was the contract? The jury did not believe the evidence tending to vary the written terms and found according to the writing What was the writing with respect to payment of salary? It was a contract between the plaintiff and the defendant in which the defendant said the plaintiff "shall be paid (for his services) the sum of Fifty Dollars ($50.00) per week." That was a promise by the defendant, for he was the only other party to the contract. If that was not his obligation, there was not an obligation on the part of anyone to pay the plaintiff anything for his services during any time. Yet there it was. It constituted, in our judgment, an agreement by the defendant either to pay the salary himself or to see that it was paid by someone else for a period of seventeen years. The consideration for this promise was the plaintiff's secret formula for the milk which the defendant received. The fact that it turned out to be of little value does not change the legal effect.

The testimony as to an oral contract shifting liability for the plaintiff's salary to the corporation was given by a witness directly in support of the new matter pleaded in the affidavit of defense. Although there was confusion on the point, it was, we find, denied by the plaintiff. Unfortunately for the defendant the jury declined to accept this testimony and rendered a verdict for the plaintiff which was a finding that the contract between the parties was the written contract sued upon, containing the promise to pay a salary to the plaintiff for the term named.

The defendant, having gone to the jury on his own evidence and after failing of a verdict, can not now be heard to say that, in doing what he asked, the court committed error. It is our opinion that in view of the introduction by the defendant of evidence to give to the written contract a new or different meaning, it was not the duty of the court to construe the contract as matter of law. Therefore the trial court committed no error in submitting the case under the circumstances.

The remaining assignments of error are insubstantial. We shall dispose of them very briefly.

■ The defendant-appellant assigns error to the trial court in its reference to the use of corporations sometimes as screens behind which persons may hide. The expression, torn completely from the context of the charge, sounds bad, but when read in connection with the context, and particularly in the light of the court's explanation to the jury of the meaning intended, it was nothing more than a digression which was entirely harmless and, if error, was without prejudice.

■ The defendant assigns error in that part of the court's charge where reference was made to the meeting of minds of the parties, arguing that, in this case, the meeting of minds was evidenced by the signatures of the parties to the written contract and that such a reference is permissible only when there is a question as to whether or not a contract has in fact been made. It is plain from the charge that the instruction as to meeting of minds did not refer to the written contract, admitted by everyone to have been made, but referred to the alleged oral contract which the defendant set up and which the plaintiff denied was ever made. In this conflict of evidence the instruction was not error.

■ The defendant charges error to the court in its remark that the defendant in developing the business expended $150,000, when in fact he invested none of his personal funds. The use of the word "defendant" instead of "Abbotts Dairies" was an obvious inadvertence. The jury must have known what the court meant. However that may be, much, if not all, of the money that went into the venture through Abbotts Dairies was indirectly the defendant's. The mistake of name was, we think, harmless and, in any event, it is not reviewable for lack of an exception.

■ When the business failed and the plaintiff was out of work, the defendant or Abbotts Dairies made what the defendant

claimed was an offer of employment which the plaintiff declined. The defendant assigns error in the court's refusal to direct the jury to render a verdict in his favor if they believed the offer was made in good faith. True, the court refused the point for a directed verdict but charged the jury with reference to the plaintiff's duty to accept employment in mitigation of damages. The trouble with the offer was its lack of certainty as to work, salary and term of service. It may be summarized in the words of one of the witnesses: "Mr. Milter need not worry, that Abbotts Dairies would take care of Mr. Milter in the wholesale department." The point was properly refused and the instruction was adequate.

■ And, finally, we think the court committed no error in permitting the plaintiff to testify in rebuttal. That was a matter within the discretion of the trial judge. Wilmoth v. Hamilton (C. C. A.) 127 F. 48; Stone v. Chicago, M. & St. P. R. Co. (C. C. A.) 53 F.(2d) 813.

The judgment is affirmed.

DAVIS, Circuit Judge, dissents.