UNITED STATES of America,
Appellee,

v.

Joseph P. RYAN, Appellant.

No. 376, Docket 23546.

United States Court of Appeals
Second Circuit.

Submitted April 20, 1956.

Decided April 26, 1956.

**482**

Louis Waldman, New York City, for the petition.

Dennis C. Mahoney, New York City, opposed.

Before HAND, SWAN and FRANK, Circuit Judges.

PER CURIAM.

The Supreme Court, 350 U.S. 299, 76 S.Ct. 400, 405, has reversed the judgment[1] herein of this court reversing a conviction of the petitioner under § 186 (b) and (d) of Title 29, U.S.C.A. In its opinion it declared that "we have examined respondent's other contentions urged before the Court of Appeals and find them without merit"; but later it deleted this passage from its opinion, and, as we understand it, the appeal comes again before us in such form that we are to consider those questions on which it was not necessary for us to pass after we had decided that the facts alleged in the indictment were not within the statute. These questions are three: (1) whether there was evidence, properly admitted, on which the finding may rest that the accused "wilfully received" money from an employer of longshoremen; (2) whether the section is so vague and indefinite that it does not adequately describe the crime; and (3) whether the section was beyond the constitutional power of Congress. These we shall take up seriatim.

■ Ryan was not only president of the International Longshoremen's Association and of the local district union, but in 1950 and 1951 he was a member of the Wage Scale Committee that signed the agreements for those years. Plainly he was in a position where his favor would be, or at any rate might be, of importance to the Kennedy corporations, who employed more than 300 longshoremen during the years 1950 and 1951, when the payments laid in the indictment were made. Similar payments had begun in December 1946, so that the Kennedys had already made four before that of 1950. They were all in cash, and described as Christmas presents on the envelopes that held them. Each year James C. Kennedy, the president of both companies, himself went to Ryan's office and pressed into his hand an envelope containing $1000; and in April of 1951 he added a payment of $500. The testimony of Ruth Kennedy on rebuttal added that the envelopes for 1950 and 1951 also carried the names of one or both of the Kennedy companies. The admission of rebuttal testimony is so patently a matter of discretion that the objection of the reception of this testimony is too trivial for discussion.[2] Nor can we treat seriously the argument that the testimony as a whole, if believed, did not justify a finding that Ryan knew that the money came from an employer of those of whom he was a "representative." To what other reason that he was a power in the union he could have ascribed such a series of substantial gifts, he does not suggest. We should have to impute to him an infantile naivety to acquit him of a complete understanding of Kennedy's meaning; any other finding than that made would have demonstrated complete incapacity to judge humane motives.

■ A less implausible argument is that, although Ryan did not know that Kennedy was an employer of members of his union, that did not support the added finding that his acceptance of the pay-

---

1. United States v. Ryan, 2 Cir., 225 F.2d 417.
2. Marande v. Texas & P. R. Co., 2 Cir., 124 F. 42; Stone v. Chicago, M., St. P. & P. R. Co., 8 Cir., 53 F.2d 813; Lindback v. Milter, 3 Cir., 70 F.2d 454.

ments was "wilful." The chief, if not only, purpose of the section was to put a stop to practices that, if unchecked, might impair the impartiality of union "representatives." That these include other and graver offences—e. g., offences against morals, like extortion—is quite true; but that does not make conscious wrongdoing a constituent of the crime even on those occasions when it covers offences against morals, for the constituent facts must be the same for all the crimes that the language covers. That the section does include situations that do not involve conscious wrongdoing is apparent from the fact that the exceptions are all devoid of that element. Strictly speaking, it may be an impertinence to discuss this question at all and not to treat the passage in the Supreme Court's opinion as authoritative which declared that "as the statute reads, it appears to be a criminal provision, *malum prohibitum*, which outlaws all payments, with stated exceptions, between employer and representative." What we have said is only to meet the possibility that, as the appellant argues, this language may not have been intended to be taken as uttered *ex cathedra*. It is impossible to read the word otherwise than as Judge Palmieri read it.

■ There remain the two other objections: (1) that the section is too vague, and (2) that it was beyond the power of Congress over interstate commerce. As we have just construed it, it does indeed forbid gifts of all kinds by employers to "representatives", save as excepted, and there can be no doubt, if it be so understood, it is altogether clear. True, it then covers gifts, however trifling and innocuous, but we can see no reason on that account to narrow its scope. The penalties prescribed make it apparent that they could not have been meant as sanctions for heinous offences; and Congress may well have wished to put a stop to the practice, even on occasions inconsiderable and harmless in themselves, rather than to make verbal distinctions that would be troublesome in application. The propriety of any gift to a fiduciary with whose beneficiaries the donor is apt to come into competition, is surely open to scrutiny, and it is a reasonable way of dealing with the evils that may be involved to taboo all such rather than to undertake the difficult task of ascertaining the motive in every case.

■ The constitutional objection is so patently invalid that it deserves no discussion.

The conviction is affirmed.