### UNITED STATES of America

### v.

### Raymond THOMPSON.

### Crim. No. 77–321.

United States District Court,
W. D. Pennsylvania.

June 1, 1978.

---

Stephen I. Goldring, Asst. U. S. Atty., Pittsburgh, Pa., for plaintiff.

Melvin Schwartz, Pittsburgh, Pa., for defendant.

## OPINION

MARSH, District Judge.

On December 21, 1977, the Grand Jury in five counts indicted the defendant for violating § 186(b), 29 U.S.C. This section provides in its pertinent part as follows:

"It shall be unlawful for any person to . . . receive, or accept, . . . any payment . . . or delivery of any money . . . prohibited by subsection (a) of this section."

Subsection (a) states in its pertinent part that:

"It shall be unlawful for any employer . . . or any person . . . who acts in the interest of an employer to pay . . ., or deliver, any money . . . (1) to any representative of any of his employees who are employed in an industry affecting commerce."

The times of the alleged offenses were "on or about the 25th day of December" in 1972, 1973, 1974, and 1975.

On April 17, 1978, the defendant in writing waived a jury trial with the consent of the government and the court.

Thereupon the following stipulation was entered into by counsel for defendant and counsel for the government.

It is hereby stipulated by and between the United States of America and the defendant, Raymond Thompson, and his attorney, Melvin Schwartz, as follows:

1. The International Brotherhood of Electrical Workers (IEEW) Local Union 5, is a labor organization engaged in an industry affecting commerce as defined by Sections 402(i) and 402(j) of Title 29, United States Code.

2. The Harry F. Ortlip Company is an electrical construction company that was engaged in the construction of various buildings and projects which employed members of Local Union 5 of the IBEW as electricians, foremen and supervisors, during the period of time pertinent to this indictment.

3. The Harry F. Ortlip Company was at all times pertinent to this indictment engaged in an industry which affected interstate commerce.

4. Records of Local Union 5 of the IBEW would show that Raymond Thompson became the Business Manager of Local Union 5, IBEW from on or about September 24, 1975, and continues in that position as of the present time.

5. As Business Manager of the IBEW, Local Union 5, Raymond Thompson performed the duties prescribed by Article VI of the Local Union 5 bylaws dated August 15, 1973, and by Article XIX of the IBEW Constitution as amended September, 1974.

6. That if called as a witness, Milton Daniels would testify as follows:

That he is Executive Vice-President of the Harry F. Ortlip Company and has held that position since June 1, 1970. That on or about the 25th of December, 1975, at 3500 Grant Building, Pittsburgh, Allegheny County, Pennsylvania, Milton Daniels, in his capacity as Executive Vice-President of the Harry F. Ortlip Company, delivered and paid to Raymond Thompson, Business Manager, Local Union 5, IBEW, the sum of $900 in United States currency, which Raymond Thompson knowingly and intentionally received and accepted, but did not request or demand. The monies were enclosed in envelopes on which were printed Merry Christmas and Happy New Year—the Ortlip Electric Company. The monies used were monies of the Ortlip Electric Company.

7. Raymond Thompson retained $250 of the $900 and distributed the balance to other Local Union 5 officers and employees.

■ The issue presented is whether the statute may properly be construed to prohibit delivery of $900 in money as an unrequested Christmas gift by an officer of an employer to the defendant, the business manager of Local Union 5 of the IBEW who retained $250 and distributed the remainder to other Local Union 5 officers and employees.[1]

In our opinion the statute should be so construed.

In *United States v. Ryan*, 350 U.S. 299, 305, 76 S.Ct. 400, 404, 100 L.Ed. 335 (1956) the Supreme Court indicated that § 186 is "a criminal provision, *malum prohibitum*, which outlaws all payments, with stated

---

1. $900 or $250 cannot be construed as a trifling or innocuous Christmas gift such as a Christmas card or a box of candy.

exceptions, between employer and representative" of his employees.

■ In *United States v. Ricciardi*, 357 F.2d 91, 99–100 (2d Cir. 1966) one of the defendants, an officer of a labor union and a representative of employees contended that a payment of money made because of friendship would not fall within the proscription of § 186 because of the lack of "evil motive." The Second Circuit rejected the "friendship" claim and held that any payment, except for the narrow statutory exceptions, violated the statute, even though the defendant might not have realized that he was violating the law. As the same court held in *United States v. Ryan*, 232 F.2d 481, 483 (2d Cir. 1956):

> "The propriety of any gift to a fiduciary with whose beneficiary the donor is apt to come into competition, is surely open to scrutiny, and it is a reasonable way of dealing with the evils that may be involved to taboo all such rather than to undertake the difficult task of ascertaining the motive in every case." [2]

The Court of Appeals of the Third Circuit appears to be in accord with the reasoning and decisions in both *Ryan* and *Ricciardi*. See *United States v. Lanni*, 466 F.2d 1102, 1110 (3rd Cir. 1972).

In *United States v. Pecora*, 484 F.2d 1289, 1294 (3rd Cir. 1973), the court stated:

> "The district court indicated that some kind of 'corrupt purpose' was necessary for a violation of § 186(b) to occur. As we have stated, that is simply not correct."

■ To allow large cash payments by employers to employee representatives by way of Christmas gifts "would make a mockery of attempts to enforce § 186(b)". *Id.*

It is not inconceivable that an employer seeking to influence a union representative of his employees by payment of $900 or other sum, might place the money in an envelope on which is printed Merry Christmas and Happy New Year and deliver the money on December 25th of each year. This court should not have to undertake the difficult task of ascertaining the motive in any such case.

■ The defendant argues that giving Christmas gifts is not within the purview of § 186(b), and that the statute may not be interpreted to prohibit Christmas gifts since such an interpretation would violate constitutional protection of religious freedom.[3] The defendant does not cite any case so interpreting § 186(b), and we find his argument to be without merit. In our opinion, where a representative of the employer who employed members of Local Union 5 delivered a $900 Christmas gift to the business manager of the local union for partial distribution to other union officers and employees, the constitutional guarantees of religious freedom do not protect that particular gift from the congressional prohibition set forth in § 186(b).

■ The defendant will be found guilty of wilfully accepting delivery of money, i. e., $900 of which he retained $250, from an employer who employed workers represented by the defendant.

An appropriate order will be entered.

---

2. The cash deliveries in *Ryan* were described as Christmas presents on the envelopes that held the cash. Each year for six years Ryan received $1,000 in December and in 1951 an additional $500 in April. See *Ryan, supra*, 232 F.2d at 482 and 350 U.S. at 300, 76 S.Ct. 400.

3. Neither the religious beliefs of the defendant nor those of Milton Daniel, the Executive Vice President of Harry Ortlip Company who delivered $900 to the defendant, are set forth in the Stipulation.