## THE STATE, DEFENDANT IN ERROR, v. SAMUEL TABAS, PLAINTIFF IN ERROR.

Argued October 6, 1931—Decided November 12, 1932.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER and CASE.

For the plaintiff in error, *Robert H. McCarter.*

For the state, *Louis A. Repetto,* prosecutor of the pleas.

PER CURIAM.

This writ of error brings up the conviction of the plaintiff in error on an indictment for perjury. The specific perjury charged is that the plaintiff in error in a civil suit against one Kalmon Leon testified as a part of the evidence material to the issue that "the said Samuel Tabas did pay to the said Morris Chepin the sum of two thousand ($2,000) dollars and upwards, and because of such payment, he, the said Samuel Tabas, was then and there by that suit and cause seeking to recover from the said Kalmon Leon, the moneys so paid by him, the said Samuel Tabas, to the said Morris Chepin, whereas, in fact, any and all statements thus made by the said Samuel Tabas, while under such oath, and to the

effect that he had paid the said Morris Chepin moneys, were false and untrue, the fact being that he had not paid the said Morris Chepin any moneys for the benefit of the said Kalmon Leon, for any purpose whatsoever, * * *."

The case is before us on eight assignments of error and two causes for reversal pursuant to section 136 of the Criminal Procedure act. The eighth assignment and first cause for reversal are substantially identical, charging that the trial court erred in refusing to direct a verdict of acquittal. A motion to acquit was made when the state rested its case and was then denied and exception allowed, and a similar motion was made at the end of the entire evidence and denied; no exception was then prayed but the refusal to direct is available under section 136 aforesaid. Both motions were placed upon the ground that the specific charge in the indictment rested on the testimony of one witness alone who was not corroborated in any way. In *State* v. *Lupton,* 102 *N. J. L.* 530; 133 *Atl. Rep.* 861, it was held by this court in a careful opinion by the late Mr. Justice Kalisch that proof that the defendant had made statements under oath, upon which the indictment is found is competent evidence on an indictment for perjury, and such evidence in connection with the testimony of one other witness, is sufficient to warrant a conviction, but the corroboration of the other witness must be of the material matter charged in the indictment. In that case the defendant was charged with having falsely sworn that he had never purchased any liquor from one Garton for beverage purposes, nor had he seen any other person purchase any liquor for beverage purposes from the said Garton. The state produced one witness who testified to having seen a sale of liquor by Garton to Lupton. The only testimony offered by way of corroboration was that of the witnesses' wife who said she had never seen any such sale or transfer; and the testimony of officers that they found liquor in the cellar of Garton's house. It was held error to permit the jury to say whether that evidence corroborated the testimony of Swift.

The case cited is, in our judgment, controlling on the

present writ of error. In the case at bar it sufficiently appeared that Tabas owed Leon some $55,000 on a mortgage on an apartment house and that Leon was anxious to have the mortgage paid; that it was arranged between them that Tabas should, if possible, procure a larger loan sufficient to pay off Leon's mortgage, and that there was an agreement between the two, in view of the probability that Tabas would have to pay some one a commission for getting the loan, that Leon would, in case the loan were procured, contribute toward the expense of obtaining the same to the extent of one-half of the commission to be paid, said one-half not to exceed $2,500. This agreement was in writing and signed by the parties. Later a loan of $100,000 was procured from an insurance company in Philadelphia and the Leon mortgage was paid off. Tabas claimed that he had been obliged to pay one Chepin, who happened to be his brother-in-law, some $5,000 for procuring the loan of $100,000 from the insurance company, and made claim on Leon for one-half of that amount, which Leon refused to pay and Tabas accordingly sued him; and the alleged perjured testimony was given in that suit, in which Tabas obtained a verdict. It is stated that the verdict was afterwards set aside, but we are not concerned with that phase of the matter.

In order to prove the perjury, Chepin was called as a witness for the state and testified that Tabas had not paid him any such sum of money, nor any money whatever, on account of commission for procuring a loan; that Tabas asked him to get a loan for him and that he, Chepin, had endeavored to do so but without success; and that he had never approached the insurance company that granted the loan. This testimony was, of course, in direct contradiction of that of Tabas in the civil suit and also his testimony in his own behalf on the trial of this cause.

For corroboration, however, the only evidence produced for the state was that of a Mr. Quinn, the vice-president of the insurance company, who testified that he had personally attended to the details of the loan to Tabas and that at no time had he seen Chepin in connection with the matter, but that all the transactions were directly with Tabas.

We agree with the proposition of counsel for the plaintiff in error that this testimony was not on a material point. The question was not whether Chepin had in fact procured the loan from the insurance company or had gone to that company for the purpose of procuring it, but whether Tabas had paid him money for doing so. It is altogether conceivable that as Tabas claimed in his testimony, he had asked Chepin to get the loan and that Chepin had directed him to go and see the insurance company and give him the impression that he, Chepin, had satisfactorily arranged matters and that it was necessary for Tabas to go himself and attend to the rest of the affair; and that in view of this, Tabas had paid Chepin for his intervention. The material question was not whether Chepin had or had not done anything in the matter, but whether Tabas had paid him under a claim that he had done something. We think it is clear that the corroboration was on an immaterial point and does not measure up to the standard set out in *State* v. *Lupton, supra.*

The conviction therefore will be reversed and the case remanded to the Atlantic County Quarter Sessions for a new trial.