## RABINOWITZ v. BORISH et al.
### Civ. No. 1763.

District Court, D. New Jersey.

Feb. 13, 1942.

Nathaniel S. Hyman, of Atlantic City, N. J. (Maurice A. Granatoor and Joseph B. Meranze, Esq., both of Philadelphia, Pa., of counsel), for plaintiff.

Charles Camp Cotton, of Woodbury, N. J., for defendants.

FORMAN, District Judge.

On May 5, 1941 Joseph Rabinowitz of Pennsylvania, plaintiff herein, and Louis Borish of New Jersey entered into a written agreement whereby Borish represented that he operated and owned a clothing factory located at Paulsboro, New Jersey, consisting of the following:

"(a) Land and Factory Building—title in name of L. Borish and Co., a New Jersey Corporation, all the stock of which is owned or controlled by Borish.

"(b) Machinery, equipment, good will and workers—title in name of Paulsboro Dress Co., a N. J. Corporation, all the stock of which is owned or controlled by Borish."

It was agreed that the land, buildings and equipment therein had a value of $8,000 free and clear of liens, mortgages or incumbrances.

The contract included the following provisions:

"Whereas * * * Rabinowitz has had considerable experience in contract work for the United States Government in connection with clothing for the army and navy.

"Whereas both parties are desirous of pooling their resources abilities and experience in the joint operation of the factory, equipment, machinery and skilled workers in the manufacture of clothing for the Government or for other private sources and civilian business as future circumstances may decide;

"Now therefore, Rabinowitz and Borish, hereby interchangeably agree as follows:

"1. Borish * * * does grant * * * to Rabinowitz an option identified as Option No. 1 to purchase within 90 days from date hereof * * * a one-half interest in the machinery, parts, accessories, equipment and entire contents of factory as now constituted, an inventory of which is hereto attached and made part hereof, good will, together with the organization and contracts of labor now existing between each of the workers now employed at said factory [for the sum of $5,000].

\* \* \* \* \*

"3. Rabinowitz, in reliance upon this option (No. 1) shall have the right to file bids for government garment work, in which he shall have the right to represent to the Government that the lands, buildings and machinery with the entire contents therein and skilled workers as above described, together with any other factory jointly owned and operated by the parties hereto, will be exclusively devoted to the fulfillment of any Government contract which may be obtained for the manufacture of garments.

\* \* \* \* \*

"6. Should Rabinowitz fail to exercise his option (No. 1) within 90 days from date hereof, this agreement shall expire and become null and void, provided, however, that if within said period of 90 days Rabinowitz shall file a bid for government work, the option herein referred to shall be extended for a period of 10 days after action taken upon said bid or bids by the government.

"7. Borish shall have the right before commencing work on any government contracts so obtained to finish the work which he may have in his plant within a reasonable time after notification that such government contract or contracts have been awarded.

\* \* \* \* \*

"10. Both parties shall devote their time exclusively to this business and shall draw salary in an amount to be mutually agreed upon, but not less than $100.00 per week each. Salaries shall commence one week after receiving material for the first government contract.

"11. Borish shall be the manager and in exclusive charge of the inside operation of the factories and the hiring and discharge of any help and shall generally have the same powers of a production or inside man. The hiring and discharge of any help shall be with the approval of Rabinowitz.

"12. Rabinowitz shall devote his time to securing contracts and such other duties in or outside the factories as may be necessary and beneficial to the business."

Other provisions of the contract concerned option No. 2 providing for the purchase of a one-half interest in the lands and factory buildings of Borish and the formation of a new company or corporation upon the exercise of Option No. 1 with each party holding a one-half interest therein.

The parties by stipulation agreed that the plaintiff on July 28, 1941 submitted a bid to the United States for the manufacture of clothing, that on August 5, 1941 the government rejected the bid, that on August 14, 1941 plaintiff tendered defendants a check for $5,000 in the exercise of Option No. 1, and that this tender was refused on the ground that the option period of 90 days had expired and the 10 day additional period was never in existence.

It is the contention of the plaintiff that: (1) He has fully complied with the terms of the contract; (2) he is entitled to specific performance; (3) the court should enter a decree establishing the relationship of the parties as partners in accordance with the terms of their agreement; and (4) in view of the apparent unwillingness of the parties to continue in the partnership relation a dissolution should be decreed and the defendants directed to render an account thereof as of August 14, 1941.

Plaintiff argues that he made a timely tender of $5,000 pursuant to Section 6 of the agreement, since it was made within 10 days after the government acted on his bid by rejecting it.

Defendants argue that Section 6 envisages a 10 day additional period on condition that a bid is accepted by the government, and that the preamble and Sections, 6, 7 and 10 of the agreement demonstrate that an accepted government contract was a condition of the agreement between the parties.

The preamble recites the experience of the plaintiff in contract work for the United States, and the desire to pool resources in the manufacture of clothing for the government or for other private sources as future circumstances should decide. Plaintiff's

explanation of the meaning of this is that the agreement contemplated the formation of a partnership in any event and that as an additional inducement provision was made that he could endeavor to procure government work in order to make his interest in the partnership more valuable. He argues further that the reference to the commencement of salaries one week after receiving material for the first government contract is not indicative of a condition precedent, for without a government contract the general rules of partnership relating to distribution of moneys would be applicable. Finally, plaintiff points out that Option 1 could have been exercised within 90 days without regard to a government contract.

We are not concerned with the effect of the contract in the event that the option had been exercised within 90 days irrespective of a government contract. We are only concerned with Section 6 of the contract providing for an extension of 10 days after action taken by the government upon his bids. Conceding for the purpose of argument that Option 1 could have been exercised within 90 days irrespective of a government contract, is it reasonable to assume that that period would be extended irrespective of an accepted government contract? It is difficult to understand why a 10 day extension would be necessary following the rejection of a bid to the government when 90 days were exhausted without regard to a government contract. The proviso in Section 6 must be intended to mean something different, and it is our opinion that the extension should be granted only in the event the government accepted a bid.

■ Procurement of government work permeates the tenor of the four corners of the agreement. The basis of the argument was the expressed acknowledgment of plaintiff's experience in the government field. Defendant Borish, and he alone, was given the right to complete existing work in the plant within a reasonable time after the granting of a government contract, and salaries to plaintiff or defendant, Borish, were not to commence until after the granting of a contract by the government. We conclude that the tender was untimely since the 10 day period of extension never came into existence.

■ Aside from being convinced that the contract was not performed by the plaintiff within the terms as the minds of the contracting parties met, we are persuaded that the contract otherwise is not one that would be enforced in equity by specific performance. Its vital motivating mechanism is the agreed contribution by the parties of the services of one as the "inside" man and the other as the "outside" man. Equity will not enforce part of a contract unless it can be separated from the rest without changing the contract in any essential particular. The personal services specified in this contract were an inseparable part of the contract and their rendition will not be compelled in equity. Weeks v. Pratt, 5 Cir., 43 F.2d 53, 57. We are in disagreement with the plaintiff that the contract in this case is one specifically enforceable in equity by decree directing the partnership to be formed and then dissolved so that in effect damages may be recovered by the plaintiff. It is true as plaintiff argues that in some cases concerned with contracts of partnership having unusual subjects such as shares in a race horse, Elliot v. Jones, 11 Del.Ch. 343, 101 A. 874, or in a patent, Satterthwait v. Marshall, 4 Del.Ch. 337, equitable relief was granted. This contract presents no such unusual subject matter. It falls within the general legal rule that ordinarily equity will not compel specific performance of a contract of partnership of indefinite duration or for subscription to shares of a joint stock company which may thereafter be transferred. 58 Corpus Juris §§ 37, 38; Restatement of the Law of Contracts, § 377(d) 2, p. 699.

A decree may be entered dismissing the complaint.