**UNITED STATES v. NEFF.**
No. 10794.

United States Court of Appeals
Third Circuit.

Argued April 24, 1953.

Decided April 1, 1954.

Morton Stavis, Newark, N. J. (Samuel M. Koenigsberg, William Rossmoore, on the brief), for appellant.

Alexander Feinberg, Asst. U. S. Atty., Newark, N. J. (Grover C. Richman, Jr., U. S. Atty., on the brief), for appellee.

Before McLAUGHLIN, KALODNER and STALEY, Circuit Judges.

KALODNER, Circuit Judge.

The defendant appeals from a judgment of conviction of perjury.[1] She was sentenced to a ten-year term on three counts of an indictment arising out of her testimony before a Federal Grand Jury in the District of New Jersey in an investigation entitled "United States v. Anthony Valenti, alias Anthony Valentino, alias Tony Valentino." The investigation concerned an allegedly false non-Communist affidavit filed by Valenti[2] in asserted violation of a Federal statute.[3] Valenti was business agent of a union (Local 80 of the United Packinghouse Workers, C.I.O.) which employed

1. 18 U.S.C. § 1621 reads as follows: "Whoever, having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true, is guilty of perjury, and shall, except as otherwise expressly provided by law, be fined not more than $2,000 or imprisoned not more than five years, or both."

2. Section 9(h) of the Labor-Management Relations Act, 29 U.S.C.A. § 159(h) as amended, provides that the National Labor Relations Board shall make no investigations and shall issue no complaints at the instance of labor union officials until they have filed non-Communist affidavits with the Board.

3. Section 1001, Title 18 U.S.C. makes it unlawful to make any false statement "in any matter within the jurisdiction of any department or agency of the United States".

the defendant as an office secretary. She was a notary public and as such took Valenti's acknowledgment to the affidavit. After testifying with respect to Valenti's execution of his affidavit and submitting to questioning directed to ascertain whether Valenti was a Communist, the defendant was examined concerning her own possible Communist Party affiliation or activities. She testified that she was not then, and never had been a member of the Communist Party (she first declined to answer as to the latter). She gave negative answers to the following questions which form the substance of the three counts of the indictment:

> 1. "Did you ever attend a meeting of the Communist Party?"
>
> 2. "Did you ever collect dues for the Communist Party?"
>
> 3. "You never handled any money for the Communist Party?"

Defendant's appeal was originally based chiefly on the insufficiency of the government's evidence and asserted prejudicial errors of the trial judge in the conduct of the trial.

■ At the argument on this appeal defendant raised a further question as to the insufficiency of the indictment on the ground that the person who administered the oath before the Grand Jury was not named therein nor was his official capacity designated.[4] In support of her contention in this respect she cited

United States v. Debrow, 5 Cir., 1953, 203 F.2d 699,[5] which held that a perjury indictment is insufficient when it fails to disclose the name of the person administering the oath or his official capacity and that he possessed requisite authority to act. In view of the fact that certiorari was granted by the Supreme Court in the Debrow case on June 15, 1953, 345 U.S. 991, 73 S.Ct. 1134, 97 L.Ed. 1399, we deemed it advisable to await its ruling, since an affirmance would have compelled an acquittal in the instant case. On November 16, 1953, the Supreme Court reversed the Fifth Circuit's holding; United States v. Debrow, 346 U.S. 374, 74 S.Ct. 113. The latter is dispositive of the defendant's contention on this phase of her appeal.

While the Debrow case was under consideration by the Supreme Court, this Court, on September 15, 1953, in United States v. Valenti, 207 F.2d 242, 244, held that the District Court for the District of New Jersey did not have venue jurisdiction of prosecution of Valenti for having made false statements in the non-Communist affidavit filed with the National Labor Relations Board and that Valenti's motion for acquittal should have been granted.[6]

Immediately following filing of the Valenti opinion the defendant requested and was granted leave to file a supplemental brief dealing with its impact upon the instant appeal. Leave was also

---

4. The pertinent part of the indictment reads: " * * * the defendant herein, having duly taken an oath before a competent tribunal, to wit, the Grand Jurors of the United States of America, duly impaneled and sworn in the United States District Court for the District of New Jersey, and inquiring for that District in a case then and there pending before said Grand Jurors in which a law of the United States authorizes an oath to be administered * * *."

5. The opinion in United States v. Debrow, 5 Cir., 203 F.2d 699 was handed down April 10, 1953, subsequent to the filing of briefs by both the defendant and the government in the instant appeal. Under the circumstances leave was given by this

Court to the defendant and the government to file supplemental briefs on the insufficiency of the indictment.

6. The basis of the decision was "that the act having legal significance is the filing of the noncommunist affidavit with the Board" (National Labor Relations Board) and since on the evidence "it was obvious that the affidavit must have been filed with the Board either in Philadelphia [where the Board had a branch office], as the regulations provided, or in Washington" and "It could not have been filed in New Jersey since the Board had no regional director's office in that state" the District Court in New Jersey did not have venue jurisdiction.

granted to the government to file a reply brief. Defendant's supplemental brief presents the contention that since we found in Valenti that the District Court of New Jersey there lacked venue jurisdiction, it follows that the Grand Jury which returned the indictment here also lacked jurisdiction to inquire into Valenti's false affidavit and, accordingly, perjury could not be charged upon defendant's testimony before it, because, she says, "where a tribunal lacks jurisdiction no perjury can be charged upon testimony given before it." In support of the last proposition defendant cites United States v. Williams, 1951, 341 U.S. 58, 65, 71 S.Ct. 595, 95 L.Ed. 747, and several State Court decisions.

It would serve no useful purpose to discuss in extenso the arguments made by defendant or the cases which she has cited. With respect to the latter it need only be said that they are inapposite.

These principles are well established:

 The Grand Jury is an integral part of our judicial system. Its sweeping inquisitorial function dates back some 800 years.[7] The Grand Jury is "a great historic instrument of lay inquiry into criminal wrongdoing."[8] "The Constitution itself makes the grand jury a part of the judicial process * * *" and "the proceeding before a grand jury constitutes 'a judicial inquiry' * * * of the most ancient lineage."[9] The stat-

utes abound with references to the functioning of Grand Juries.[10] The scope of a Grand Jury investigation is not limited by the probable result of its inquiry or by doubts whether any particular individual will be found properly subject to an accusation for crime.[11] "A grand jury that begins the investigation of what may be found to be obstructions to justice * * * opens up all the ramifications of the particular field of inquiry. * * * And Congress certainly did not restrict a grand jury in dealing with all crimes disclosed by its investigation."[12] "That a grand jury proceeding has no defined litigants and that none may emerge from it, is irrelevant to the issue."[13] An investigation by a Federal Grand Jury need not be preceded by any definition whatever of the crime to be investigated or the persons against whom an accusation is sought.[14] The examination of witnesses before a Grand Jury need not be preceded by presentment, indictment or other formal charge.[15] A witness "is not entitled to challenge the authority of the court or of the grand jury, provided they have a de facto existence and organization. * * *" and it is "* * * no concern of one summoned as a witness whether the offense [under investigation] is within the jurisdiction of the court or not. At least, the court and grand jury have authority and jurisdiction to investigate the facts in order to determine the question whether the

---

**7.** "The consecutive history of the Grand Jury goes back to the Assize of Clarendon, issued by Henry II in 1166." Orfield, 137, 38 Col.L.R. 1493, 1496.

**8.** United States v. Johnson, 1943, 319 U.S. 503, 512, 63 S.Ct. 1233, 1237, 87 L.Ed. 1546.

**9.** Cobbledick v. United States, 1940, 309 U.S. 323, 327, 60 S.Ct. 540, 542, 84 L.Ed. 783.

**10.** Rule 6, Federal Rules of Criminal Procedure, Title 18 U.S.C. provides:
"Rule 6. The Grand Jury
"(a) Summoning Grand Juries. * * *.
"(b) Objections to Grand Jury and to Grand Jurors. * * *"

The Act of June 25, 1948, c. 646, 62 Stat. 951 et seq., 28 U.S.C. (1950) § 1861 refers to the qualifications of grand jurors; Sec. 1864 provides for the manner of drawing grand jurors; Sec. 1865 for their selection; Sec. 1867 for their summoning; Sec. 1871 for the payment of their fees and expenses; etc.

**11.** Blair v. United States, 1919, 250 U.S. 273, 39 S.Ct. 468, 63 L.Ed. 979.

**12.** United States v. Johnson, Note 8, supra.

**13.** Cobbledick v. United States, Note 9, supra.

**14.** Hale v. Henkel, 1906, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652.

**15.** Hale v. Henkel, Note 14, supra.

facts show a case within their jurisdiction." [16]

■ The principles stated are dispositive of the defendant's contention that perjury could not be charged upon defendant's testimony before the Grand Jury because the District Court lacked venue jurisdiction in the Valenti case.

■ Applying these principles to the instant case we are of the opinion that the Grand Jury which received the defendant's testimony was lawfully constituted and it had "authority and jurisdiction to investigate the facts in order to determine the question" whether Valenti could "be found properly subject to an accusation for crime." It was "no concern" of the defendant whether the offense under investigation (Valenti's suspected filing of a false non-Communist affidavit) was within the jurisdiction of the District Court of New Jersey. Having been subpoenaed by the Grand Jury, the defendant was "bound not only to attend, but to tell what she knew in answer to questions framed for the purpose of bringing out the truth of the matter under inquiry", subject, of course, to her constitutional guarantees under the Fifth Amendment. Blair v. United States, 1919, 250 U.S. 273, 279, 282, 39 S.Ct. 468, 63 L.Ed. 979. As was stated in the latter, she was "not entitled to set limits" to the Grand Jury's investigation which, under the law, was "not limited by the probable result of its inquiry."

■ Historically, Grand Juries have been constituted for the purpose of ascertaining whether or not crimes have been committed in their district. Not infrequently their investigation has failed to establish criminal wrongdoing. To say that there can be no prosecution for perjury committed by a witness because the Grand Jury's investigation has proved fruitless, is an utterly inconceivable proposition.

As was stated in United States v. Williams, supra, 341 U.S. at page 68, 71 S.Ct. at page 600, the federal perjury statute [17] was " * * * enacted in an effort to keep the course of justice free from the pollution of perjury * * * " and is " * * * directed * * * at its perpetration; at the probable wrong done the administration of justice by false testimony", and " * * * federal courts * * * uphold charges of perjury despite arguments that the federal court at the trial affected by the perjury could not enter a valid judgment due to lack of diversity jurisdiction, or due to the unconstitutionality of the statute out of which the perjury proceedings arose."

For the reasons stated we do not subscribe to the defendant's contention that perjury could not be charged upon her testimony before the Grand Jury because there was a lack of venue jurisdiction in United States v. Valenti, supra.

That determination brings us to the consideration of the issues initially presented by defendant's appeal. Summarized these issues are:

1. Was there compliance with the standard of proof required to sustain a conviction of perjury with respect to each of the three counts of the indictment?

2. Were the questions addressed to the defendant and her replies thereto material to the Grand Jury's inquiry relating to Valenti?

3. Was defendant denied her rights under the privilege against self-incrimination?

4. Was there prejudicial error in the conduct of the trial on the part of the trial judge and government counsel?

On the score of the first issue it is the defendant's contention that the evidence was insufficient to sustain the jury's verdict of guilty as to each of the three counts of the indictment. The crux of

16. Blair v. United States, Note 11, supra, 250 U.S. at page 283, 39 S.Ct. at page 471.

17. Sec. 1621, Title 18 U.S.C.

the defendant's contention is that the falsity of her statements to the Grand Jury was not established by the testimony of two witnesses or the testimony of one witness supported by proof of corroborating circumstances, as required by well-settled principles. Weiler v. United States, 1945, 323 U.S. 606, 607, 65 S.Ct. 548, 89 L.Ed. 495; United States v. Nessanbaum, 3 Cir., 1953, 205 F.2d 93, 95. Since the government contends to the contrary, it is necessary to discuss the evidence with respect to each of the three counts to determine whether it complied with the proof required to sustain a conviction of perjury.

Before proceeding to a consideration of the evidence it is necessary to note the following undisputed facts:

The defendant appeared before the Grand Jury on October 11, 1951. The indictment was filed February 5, 1952. On February 15, 1952, she entered a plea of not guilty. On February 25, 1952, she filed a notice of motion to dismiss the indictment, or in the alternative to inspect and copy minutes of the Grand Jury and for a bill of particulars. After a hearing the District Court on March 25, 1952, entered an order (1) denying the motion to dismiss the indictment; (2) denying the motion to inspect and copy the minutes of the Grand Jury except with respect to the defendant's own testimony, and (3) granting in part and denying in part the motion for a bill of particulars.[18] On April 2, 1952, the government filed its bill of particulars, pursuant to the order of March 25, 1952.

On April 3, 1952, defendant gave notice of motion for a supplemental bill of particulars and a motion to compel the government to make an election between Counts 2 and 3 of the indictment.[19] (Count 2 related to collection of "dues" for the Communist Party and Count 3 related to the handling of "money" for the Communist Party.) At a hearing on April 18, 1952, the Court orally granted in part defendant's motion for supplemental bill of particulars and denied the motion to compel the government to make an election between Counts 2 and 3 of the indictment. On April 24, 1952, the government filed a supplemental bill of particulars. Stated in composite form the particulars directed to be answered and the answers given in the original and supplemental bills read as follows:

First Count:

(1) Where was such meeting held?—333 Arch Street, Camden, New Jersey.

(2) When was such meeting held, giving date, and the hours of such meeting?—Just immediately prior to June 23, 1947, at approximately 5 P.M., another meeting just immediately prior to April 30, 1948, at approximately 5 P.M. The United States does not have sufficient knowledge to give the exact hour, day or week.

Second Count:

(1) When were such dues collected?—Sometime during the day in the months of August, September

---

18. The order directed the government to serve and file within 10 days a bill of particulars in the following matters:
 "As to the First Count
 "(1) Where was such meeting held?
 "(2) When was such meeting held, giving date and the hours of such meeting?
 'As to the Second Count
 "(1) When were such dues collected?
 "(2) Where were such dues collected?
 "(3) The names and addresses of all persons from whom such dues were collected.
 "(4) The amount of such dues collected.
 "As to the Third Count

"(1) When was such money handled?
"(2) Where was such money handled?
"(3) How much money was handled?"

19. Defendant's motion for a supplemental bill of particulars complained that the bill of particulars filed on April 2, 1952, did not give, as to Count 1, specific information as to the date and hour of the Communist meeting which the government charged the defendant had attended; with respect to Counts 2 and 3 the bill had stated the months but not the dates when it was alleged that Communist dues were collected or Communist money handled.

and October of 1946. Sometime during the day in January, 1948. The United States does not have sufficient knowledge to give the exact hour, day or week.

(2) Where were such dues collected?—333 Arch Street, Camden, New Jersey.

(3) The names and addresses of all persons from whom such dues were collected.—Robert C. Woolley, 133 N. 25th St., Camden, N. J.; John Verderosa, 1030 Langham Avenue, Camden, N. J.

(4) The amount of such dues collected.—Approximately $16.00.

Third Count:

(1) When was such money handled?—Sometime during the day in the months of August, September and October of 1946. Sometime during the day in January, 1948. The United States does not have sufficient knowledge to give the exact hour, day or week.

(2) Where was such money handled?—333 Arch Street, Camden, New Jersey.

(3) How much money was handled?—Approximately $16.00.

On May 20, 1952, the day after defendant's trial had started, the government filed a second supplemental bill of particulars relating to Counts 2 and 3 of the indictment and which, for the first time listed Alfred Paglione, Anna Magee and George Dance as having paid Communist Party dues to the defendant.[20]

Defendant's counsel vigorously objected to the filing of the second supplemental bill of particulars on the ground that it was filed after the trial had started and moved that it be stricken.

The motion was denied. Defendant's counsel then moved for a 10-day continuance to enable him to prepare for trial with respect to the matters embraced in the second supplemental answer. That motion too was denied.

The denial of both motions was premised on these grounds:

(1) The statement of the government's attorney that he had for the first time ascertained the information embraced in the second supplemental bill on Friday afternoon, May 16, 1952, (the case went to trial Monday, May 19th) and that he had immediately imparted the information to defendant's counsel by telephone and had mailed the second supplemental bill to his office; and (2) that on March 25, 1952, when the trial judge granted defendant's motion for a bill of particulars, he "specifically stated in the record that this should not limit the United States to the proof that it then had" and "if it (the United States) subsequently obtained any proof, it would be entitled to use such * * * newly-obtained proof, upon condition they immediately advise you (defendant's counsel)."

The impact of the second supplemental bill of particulars upon the course of the trial and the issues presented on this appeal will be discussed later.

We proceed to a discussion of the evidence adduced by the government which it here asserts (and the defendant denies) sustained a conviction of perjury with respect to each of the three counts of the indictment.

As to Count 1:

"Q. Did you ever attend a meeting of the Communist Party? A. No."

20. The second supplemental bill of particulars read as follows:
 "Second Count
 "1. 1945 and 1946
 "3. Alfred Paglione
 928 Woodland Avenue
 Camden, N. J.
 Anna Magee
 1146 Atlantic Avenue
 Camden, N. J.
 George Dance
 Sewell, N. J.
 "The United States does not have sufficient knowledge to give the exact hour, day or week, or month.
 "Third Count
 "1. 1945 and 1946
 "The United States does not have sufficient knowledge to give the exact hour, day or week, or month."

The testimony as to this Count was as follows:

A single witness, Robert Woolley, an employee of the Campbell Soup Company, a member of the defendant's union and a former member of the Communist Party, testified he had seen the defendant at two Communist Party meetings, one in June, 1947, and the other in April, 1948. He said the question of Communist dues was discussed at the meetings; the defendant at the first meeting read a list of those who had paid dues and those who had not paid and had then asked him to pay up his party dues. Woolley said that pursuant to that request he paid the defendant $10.00 Communist Party dues in January, 1948.

As corroborating evidence that the defendant had attended Communist Party meetings the government adduced the following testimony:

(1) Mrs. Freda Susan Wandless, a member of the defendant's union, testified (a) defendant had admitted to her sometime in 1946, 1947 or 1948, that at that time she was a member of the Communist Party and (b) Valenti in the presence of the defendant had said: "You know she is a Communist." (On motion of defendant's counsel the trial judge had stricken the testimony that the defendant had admitted she was a member of the Communist Party but nevertheless, in his charge to the jury, submitted it as permissive corroboration of Woolley's testimony as to attendance at Communist Party meetings.) [21] It may be noted that although Mrs. Wandless said she had never joined the Communist Party, she nevertheless had attended one of its meetings but that the defendant was *not* present.

(2) Elmer R. Hammell, employed in the office of the Secretary of State of New Jersey, produced from official files a petition of nomination for a candidate for governor on the Communist Party ticket filed May 31, 1946, allegedly signed by the defendant.[22] The nominating petition contained a pledge "to support and vote for the person named in such petition."

(3) John Verderosa, an employee of Campbell Soup Company and a member of the defendant's union, testified that he had been a member of the Communist Party and that in September, 1946, and again in October, 1946, he paid the defendant $1.00 as Communist Party dues at her office in the union's headquarters.

(4) Frank DiMaio, an employee of Campbell Soup Company and a member of the defendant's union, testified that he had been a member of the Communist Party; he had paid Communist Party dues to Valenti but *not* to the defendant; and he had heard her request and had seen her collect Communist Party dues "on one occasion * * * around 1945" from Alfred Paglione and George Dance.

On the score of Count 1, with respect to the testimony above summarized, the trial judge in his charge to the jury gave these instructions:

"Now, the law provides, ladies and gentlemen, that no person may be convicted of the crime of perjury unless the alleged falsity of the statements made by the defendant under oath be established by the testimony of two independent witnesses or by one witness and corroborating facts and circumstances. In the absence of such proof, the defendant must be acquitted. The Supreme Court has held and I quote:

---

21. In directing this testimony be stricken the trial judge, following objection that the question was "clearly illegal", said: "It is, and the answer, ladies and gentlemen, will be stricken. And you will naturally pay attention to the same admonition I gave you yesterday. When the Court orders something stricken you will

try as far as is humanly possible to eliminate, obliterate it from your minds, because it's not for your consideration. It is not legally a part of the case."

22. The witness Woolley identified defendant's signature on the nominating petition.

" 'Two elements must enter into a determination that corroborative evidence is sufficient, (1) That the evidence, if true, substantiates the testimony of a single witness who has sworn to the falsity of the alleged perjurious statements; and (2) That the corroborative evidence is trustworthy. To resolve this latter question is to determine the credibility of the corroborative testimony—a function which belongs exclusively to the jury.' [23]

" * * * As there is but one witness, Robert Woolley, who has sworn to the falsity of the alleged perjurious statement in the first count, namely, 'Did you attend a meeting of the Communist Party?' Answer 'No.' It follows that to find the defendant guilty on count 1 you must believe beyond a reasonable doubt both: (a) that Robert Woolley's testimony that he attended a meeting or meetings of the Communist Party at which Mrs. Neff was present, and (b) that there is other trustworthy evidence proving circumstances beyond a reasonable doubt that substantiates that particular part of Mr. Woolley's testimony. Such circumstances or occurrences which may substantiate the testimony of Mr. Woolley on this particular point, if you find, as a fact, that such circumstances exist or occurred are:

"(1) The signing of the petition of nomination for a candidate for Governor upon the Communist Party ticket and a pledge therein contained that she would support his candidacy, by the defendant, Mrs. Neff; (2) the statement of Mrs. Wandless that Mrs. Neff stated to her that she was a member of the Communist Party; (3) the statement of Mrs. Wandless that Mrs. Neff made no reply when the state-ment was made by Mr. Valentino to Mrs. Wandless in the presence of Mrs. Neff that Mrs. Neff was a Communist; (4) the statement by Mr. Woolley that he paid Mrs. Neff Communist Party dues; (5) the statement of Mr. Verderosa that he paid Mrs. Neff Communist Party dues, and (6) the statement of Mr. DiMaio that he heard Mrs. Neff ask Alfred Paglione and George Dance for their party dues, and saw them pay her money."

It is the defendant's contention that the testimony was insufficient to sustain a conviction on Count 1 and that she was, and is entitled to a verdict of ac-quittal as to that Count. In support of her contention she points to the fact that only one witness, Woolley, testified that she ever attended a meeting of the Communist Party and that the other evi-dence adduced by the government was not relevant to, or corroborative in any respect of Woolley's testimony as to her attendance at a Communist Party meet-ing. It may be noted parenthetically that the defendant makes the further contention that the testimony of Ham-mell and DiMaio was independently in-admissible because the government, al-though informed as to it, had failed to name them in any of its various bills of particulars.

In considering the primary issue as to whether there had been corroborating evidence as to the defendant's attendance at Communist Party meetings, we note these well-settled principles:

■■■■ In prosecutions for perjury the uncorroborated oath of one witness is not enough to establish the falsity of the testimony of the defendant; the falsity must be evidenced by the testi-mony of two independent witnesses or by one witness and corroborating evi-dence, and in the absence of such proof the defendant must be acquitted.[24] To sustain a conviction for perjury the evi-

23. The quotation is from Weiler v. United States, 1945, 323 U.S. 606, 610 [65 S.Ct. 548, 550, 89 L.Ed. 495].

24. Weiler v. United States, supra, Note 23; Hammer v. United States, 1926, 271 U.S. 620, 626, 46 S.Ct. 603, 70 L.Ed. 1118; United States v. Nessanbaum, 3 Cir., 1953, 205 F.2d 93.

dence must be strong, clear, convincing and direct.[25] Where the government seeks to establish perjury by the testimony of one witness and corroborating evidence, the latter must be independent of the former and inconsistent with the innocence of the defendant. "When the courts speak of corroborative evidence they mean *evidence aliunde*—evidence which tends to show the perjury independently."[26] Before submitting a perjury case to the jury the court must determine whether the quantitative rule of evidence has been satisfied.[27] Where corroborative evidence is offered the court must rule, as a matter of law, whether it is sufficient—that is, whether the corroborative evidence, if true, substantiates the testimony of the single witness who has sworn to the falsity of the alleged perjurious statement; the credibility of the corroborative testimony is exclusively for the jury.[28]

Applying the principles stated, we are of the opinion that the trial judge erred in denying defendant's motion for acquittal as to Count 1. He should have ruled as a matter of law that the evidence asserted by the government to be "corroborative" of Woolley's testimony as to the defendant's attendance at a Communist Party meeting patently failed to meet the standards of proof long established in perjury cases. The "corroborative" evidence did not independently establish the perjury charged in Count 1. It did not establish or tend to establish that the defendant had ever attended a Communist Party meeting.

The mere circumstances that one has signed a Communist Party nominating petition is in no way "evidence" that one has attended a Communist Party meeting.[29] Nor does the circumstance that one is a Communist Party member establish that he or she ever attended a Communist Party meeting. The same is equally true with respect to the collection of dues for the Communist Party. On the latter score it must be noted that the "corroborative" evidence relating to the collection of dues in each instance specifically fixed the place of collection at the union office where defendant was employed—not at a Communist Party meeting. We do not think that the points enumerated have to be labored. Countless numbers of citizens have been stalwart members of political parties; signed their nominating petitions and collected contributions for them without ever having attended a meeting of their respective parties. The connection between the circumstances stated, viz., membership in the Communist Party, signing a Communist Party nominating petition and the collection of Communist Party dues, and the ultimate fact sought to be established—attendance at a party meeting—is not commensurate with the character of corroborative evidence. While it may be more probable that one who is a member of a political party and had signed one of its nominating petitions and had collected dues for it, would attend a party meeting than one who was not a party member, there is certainly no inconsistency between en-

25. Smith v. United States, 6 Cir., 1948, 169 F.2d 118; Hart v. United States, 9 Cir., 1942, 131 F.2d 59; Phair v. United States, 3 Cir., 1932, 60 F.2d 953.

26. McWhorter v. United States, 5 Cir., 1952, 193 F.2d 982, 985; United States v. Hiss, 2 Cir., 1950, 185 F.2d 822; Fraser v. United States, 6 Cir., 1944, 145 F.2d 145, 151; United States v. Buckner, 2 Cir., 1941, 118 F.2d 468.

27. Smith v. United States, supra, Note 25.

28. Weiler v. United States, supra, Note 23; State v. Bulach, 1950, 10 N.J.Super. 107, 111, 76 A.2d 692, 694; see also, State v. Tabas, 1932, 163 A. 29, 10 N.J.Misc. 1212;

State v. Lupton, 1926, 102 N.J.L. 530, 532, 133 A. 861.

29. In the same category is the testimony of an admission made by the defendant to the Grand Jury that she had once voted for a candidate of the Communist Party, named Hardy, in a local election in Camden, New Jersey. It may be noted parenthetically that the defendant had told the Grand Jury that she had "just voted for" but had not electioneered for Hardy. It may further be noted that the trial judge did not include this testimony as possible corroborative evidence in his charge to the jury nor did he refer to it therein.

gaging in one of the acts stated and not the other (attending a party meeting).

▮▮▮ Evidence tending to establish the probability of conduct is not enough; more than that is required; the path from the corroborating evidence must lead directly to the inevitable—not merely probable—conclusion of falsity. The corroborative evidence must directly substantiate the testimony of a single witness who has sworn to the falsity of the alleged perjurious statement and must be equally strong and convincing as the direct testimony which would be regarded as sufficient proof.[30]

As to Count 2:

"Q. Did you ever collect dues for the Communist Party? A. No."

The testimony adduced by the government as to defendant's collection of Communist Party dues was as stated in the discussion relating to Count 1; namely, Woolley, pursuant to defendant's prior request paid her $10.00 in January, 1948; Verderosa $1.00 in September, 1946 and $1.00 in October, 1946; DiMaio heard her request and saw her collect Communist Party dues "on one occasion around 1945" from Paglione and Dance.

On the score of Count 2, the trial judge in his charge to the jury gave these instructions:

"In reference to the second count that alleges that Mrs. Neff committed perjury when she swore under oath that she had never collected dues for the Communist Party, before you can find the defendant, Mrs. Neff, guilty you must believe beyond a reasonable doubt that from the testimony of Woolley, Verderosa and DiMaio that Mrs. Neff had and knew she had collected such dues and knew that her testimony was false when she gave it."

With respect to this Count the defendant makes these contentions: (1) the testimony of Woolley, Verderosa and DiMaio was so indefinite, contradictory and incredible and lacking in evidentiary value that it should not have been submitted to the jury; (2) the testimony as to Woolley's and Verderosa's payment of dues was not limited to the time of payment specified in the government's bills of particulars; (3) the payment and time of payment of dues by Paglione and Dance had not been stated in the original and supplemental bills of particulars as directed by the trial judge (in his order of March 25, 1952, and his supplemental order of April 18, 1952) [31] and accordingly DiMaio's testimony with respect to such payment was inadmissible; (4) the trial judge erred in permitting the second supplemental bill of

---

30. Our holding that the evidence adduced in support of Woolley's testimony was not "corroborative" makes it unnecessary to discuss further substantial specific objections to the admissibility of that evidence which were premised on the following contentions: (1) The trial judge submitted to the jury as possible corroborative evidence the testimony of Mrs. Wandless that the defendant had stated to her that she was a member of the Communist Party despite the fact that he had, on objections during the trial, stricken such testimony and had instructed the jury to "obliterate it from your minds * * * it is not legally a part of the case"; (2) the trial judge had submitted as possible corroborative evidence Woolley's testimony that he had paid defendant Communist Party dues despite the fact that such evidence could not possibly be "corroborative" under the law because it was

not "independent" of Woolley's direct testimony that he had seen the defendant at Communist Party meetings and was in effect hoisting the latter's testimony by its own bootstraps; (3) the trial judge had permitted introduction of DiMaio's testimony as to defendant's collection of dues from Paglione and Dance despite the fact that the names of the latter two had not been named until the second supplemental bill of particulars was filed the day after the trial had started and accordingly should either have been barred or the trial continued as requested by defendant; (4) evidence was admitted as to alleged attendance of meetings occurring from three to seven weeks prior to the dates listed in the government's bills of particulars; and (5) the trial judge erred in failing to restrict the evidence to the bills of particulars generally.

31. Notes 18 and 19 supra.

particulars (naming Paglione and Dance) to be filed on the day after the trial had commenced; and (5) the trial judge erred in refusing to grant a 10-day continuance of the trial requested by the defendant by reason of the belated filing of the second supplemental bill.

It is readily apparent that the primary issue presented by defendant's contentions arises out of the filing of the second supplemental bill of particulars on the second day of the trial; the admission of the testimony therein encompassed and the refusal of the trial judge to grant the 10-day continuance demanded by defendant. As far as her attack on the testimony of Woolley and Vederosa is concerned it was solely a jury question and the jury resolved it against her. As to DiMaio's testimony—the ultimate disposition of the issues raised with respect to it depends on the resolution of the question whether it was properly submitted to the jury in view of the fact that it dealt with matters embraced only in the second supplemental bill of particulars.

■ Bills of particulars in criminal cases in federal courts are governed by Rule 7(f) of the Federal Rules of Criminal Procedure, 18 U.S.C., which is substantially a restatement of well-settled principles. The latter establish that a bill of particulars "Once obtained * * concludes the rights of all parties who are to be affected by it, and he who has furnished the bill of particulars under it, must be confined to the particulars he has specified, as closely and effectually as if they constituted essential allegations in a special declaration." [32] Otherwise stated, a bill of particulars strictly limits the prosecution to proof within the area of the bill.[33]

■ In the instant case the trial judge on motion of the defendant, shortly after her indictment, directed the government to file a bill of particulars as to Count 2 with respect to the time and place where the dues were collected and "the names and addresses of all persons from whom such dues were collected." [34] Subsequently, as earlier detailed in this opinion, the government, by bill and supplemental bill, listed the time of payment of dues as "Sometime during the day in the months of August, September and October 1946. Sometime during the day in January 1948"; and those who had paid dues as Woolley and Verderosa. That was the posture of the situation with respect to the bills of particulars when the case went to trial and under it the defendant was only required to defend with respect to collection of dues from Woolley and Verderosa at the times specified. The record discloses that defendant had geared her defense to that end and in it sought to impeach and negative the testimony of Woolley and Verderosa both as to the purpose of their payments and the time thereof.[35] It cannot be gainsaid that the burden of the defense was greatly increased by reason of the permitted filing of the second supplemental bill of particulars and that she was deprived of

32. Commonwealth v. Giles, 1854, 1 Gray 466, 469, 67 Mass. 466, 469—cited and approved in Land v. United States, 4 Cir., 1949, 177 F.2d 346, 349; United States v. Gouled, D.C.S.D.N.Y.1918, 253 F. 239; Dunlop v. United States, 1897, 165 U.S. 486, 17 S.Ct. 375, 41 L.Ed. 799.

33. United States v. Slaughter, D.C.D.C. 1950, 89 F.Supp. 205; Bryan v. United States, 5 Cir., 1949, 175 F.2d 223; Rabinowitz v. Borish, D.C.D.N.J.1942, 43 F. Supp. 413; United States v. Glasser, 7 Cir., 1940, 116 F.2d 690, reversed in part and affirmed in part, 1942, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680; United States v. Adams Express Co., D.C.S.D.Iowa 1902, 119 F. 240.

34. The government's contention that the granting of a bill of particulars is a matter which lies within the sole discretion of the trial judge is academic in view of the fact that here the trial judge granted the bill.

35. The defendant at the trial attempted to prove by documentary evidence and witnesses that in the months of September and October, 1946 and in January, 1948, she had collected monies from Verderosa and Woolley for two union campaigns which had nothing to do with the Communist Party in the amounts which they had described as "dues".

adequate opportunity to meet the charge therein contained. In that respect there was breached the rule that "The purpose of a bill of particulars is to enable the accused to avoid surprise, and to enable him to prepare for trial." [36]

In denying defendant's motions (1) to strike the second supplemental bill; (2) to rule inadmissible DiMaio's testimony with respect to Paglione and Dance; and (3) for a 10-day continuance, the trial judge assigned the two reasons stated in detail earlier in this opinion; the first was that in directing the bill of particulars he had not restricted the government to the proof which it then had or which it might subsequently obtain; and the second, that government counsel was first advised as to the nature of DiMaio's testimony on May 16th, three days before the trial and immediately prepared his second supplemental bill and advised defendant's counsel of its contents and his intention to file it. The trial judge clearly erred with respect to his first reason. The record fails to disclose that he had ever made any reservation in his pre-trial orders directing the bill of particulars. As to the second reason—DiMaio's testimony [37] and a colloquy between defense counsel and Mr. Feinberg,[38] government's counsel, developed that the latter had long prior to the eve of the trial known about DiMaio: that he had been present when DiMaio testified before the Grand Jury on February 5, 1952, with respect to defendant's collection of Communist Party dues from Paglione and Dance. Feinberg did not attempt to explain his lapse

of memory in this respect or his neglect to include the information in his original or first supplemental bill of particulars. The trial judge, however, graciously took "judicial notice of the fact" that Feinberg in "the busyness of his office * * had forgotten what the witness (DiMaio) said"; that it "would put too heavy a burden upon him" to have required him to recall DiMaio's testimony when he was preparing the pre-trial bills of particulars. We regret that we cannot be as gracious as was the trial judge; to do so would be in violation of well-settled principles designed to preserve the rights of accused persons.

The situation precipitated by the filing of the second supplemental bill the day after the trial had started could have been resolved by the trial judge in one of two ways; he could have denied the motion to strike the second supplemental bill and granted the 10-day continuance sought by defendant to meet it or he could have granted the motions to strike the bill and to disallow DiMaio's testimony and proceeded with the trial. He chose neither of these available alternatives but instead allowed the mooted bill to be filed and DiMaio to testify, and denied the continuance sought by the defendant. In so doing he erred and the error was prejudicial to the extent of requiring the reversal of the conviction on Count 2 and remanding for a new trial as to it.[39]

As to Count 3:

"Q. You never handled any money for the Communist Party? A. No."

36. Hughes v. United States, 6 Cir., 1940, 114 F.2d 285, 288. To the same effect see also United States v. Lefkoff, D.C. E.D.Tenn.1953, 113 F.Supp. 551, 554.

37. DiMaio also testified that prior to the defendant's appearance before the Grand Jury on October 11, 1951, (six months before government's first bill of particulars was filed) he had advised the F. B. I. of defendant's collection of dues from Paglione and Dance.

38. Alexander Feinberg, Assistant United States Attorney, who conducted the prosecution at the trial. Feinberg, together with Grover C. Richman, Jr., the

then United States Attorney for the District of New Jersey, were in charge of the Grand Jury investigation.

39. It may conceivably be argued that the conviction on Count 2 could be sustained on the testimony of Woolley and Verderosa under the two-witness rule without DiMaio's testimony. Such an argument would fall of its own weight. In his charge the trial judge instructed the jury that it could convict if it believed "the testimony of Woolley, Verderosa and DiMaio". It is impossible, of course, to determine to what extent the inclusion of DiMaio's testimony entered into the jury's determination of guilt on Count 2.

On the score of this Count the trial Judge in his charge to the jury gave this instruction:

> "In reference to the third count that alleges that Mrs. Neff committed perjury when she swore under oath that she had never handled any money for the Communist Party, before you can find the defendant, Mrs. Neff, guilty you must believe beyond a reasonable doubt that from the testimony of Woolley, Verderosa, and DiMaio that Mrs. Neff had and knew she had handled money for the Communist Party and knew that her testimony was false when she gave it."

The instruction given with respect to Count 3 was identical in every respect with that given as to Count 2 with this exception—where the former referred to the handling of money the latter referred to the collection of dues.

The evidence relied on by the government to sustain the conviction on Count 3 is identical in every respect with the evidence which it asserts sustains the conviction on Count 2, viz., defendant's collection of Communist Party dues from Woolley, Verderosa, Paglione and Dance. There wasn't a single iota of evidence that the defendant "handled any money for the Communist Party" other than the "dues" mentioned.

Not only was the evidence with respect to Counts 2 and 3 identical, but the two Counts were identical in content and context except that the former related to the collection of dues and the latter to the handling of money. The same is true with respect to the bill of particulars and supplemental bill dealing with Counts 2 and 3.

Moreover, the record of the defendant's testimony before the Grand Jury on which Counts 2 and 3 were premised clearly demonstrates that the questions put to her and her answers thereto dealt with but one subject matter. She was first asked "Did you ever collect dues for the Communist Party?" Her answer was "No." A few minutes later she was again questioned on this score as follows:

> "Q. As a matter of fact Mrs. Neff, in your activities as Mr. Valentino's secretary, don't you collect dues for the Communist Party? A. No.
>
> "Q. You never handled any money for the Communist Party? A. No."

■ In view of the complete absence of any testimony on the score of Count 3 we are of the opinion that the trial judge erred in denying defendant's motion for judgment of acquittal as to that Count.

We advert now to the defendant's other points:

Were the questions addressed to the defendant and her replies thereto material to the Grand Jury's inquiry relating to Valenti?

■ Defendant urges that the questions put to her before the Grand Jury were not material inquiries within the meaning of 18 U.S.C. § 1621.[40] We do not agree. The questions in issue were directed towards impeaching the credibility of the witness. It is well established that interrogation of such an order is material as that term is here employed. United States v. Weiler, 3 Cir., 1944, 143 F.2d 204, 206, reversed on other grounds, 1945, 323 U.S. 606, 65 S.Ct. 548, 89 L.Ed. 495; Blackmon v. United States, 5 Cir., 1940, 108 F.2d 572, 573; United States v. Shinn, C.C.D.Or. 1882, 14 F. 447, 453.

Defendant relies considerably upon Bowers v. United States, 1953, 92 U.S. App.D.C. 79, 202 F.2d 447 which involved the issue of whether certain questions asked Bowers by a Senate Subcommittee were "pertinent to the question under inquiry" as this phrase is used in 2 U.S.C.A. § 192. The case holds that "pertinency" if not evident by context must be proved and may not be presumed. The situation before us is patently outside the scope of the Bowers case, for taken in context the questions here involved appear on their face to

---

40. Note 1, supra.

have been material. A brief reference to that context will serve to indicate the propriety of the questions asked.

At the Grand Jury proceeding the defendant testified that she was an office secretary of Local 80 A, United Packinghouse Workers of America, in Camden, New Jersey, of which union Valenti was the business agent and that in her capacity as notary public she had taken the latter's non-Communist affidavit which was being prepared in accordance with Section 9(h) of the Labor Management Relations Act. She had known Valenti for about 12 years and had, since 1944 worked under him in the union office. Because of her familiarity with Valenti's union activities and her daily association with him her disavowel of ever having any intimation that he was involved in Communist Party activities was of definite significance in the work then before the Grand Jury. Questions about her own possible ties with the party would naturally be appropriate to show bias and hence vitiate the impact of her testimony. The questions in issue seem, therefore, clearly to have been material on their face.

Was defendant denied her rights under the privilege against self-incrimination?

The defendant contends she was denied rights accorded by the privilege against self-incrimination in her appearance before the Grand Jury. This contention is based upon the following facts: The defendant was subpoenaed approximately one and a quarter hours previous to testifying before that body. According to her testimony there she had not had time to consult an attorney before making her appearance. The questioning to which she was subjected soon swerved to an intense interrogation of whether she had ever been affiliated in any way with the Communist Party. The first question of this order was whether she was a member of that party, to which the defendant responded in the negative. She was then asked whether she had ever been a member. To this query the defendant invoked the privilege against self-incrimination. There was then some parrying, of doubtful propriety, as to the source of defendant's knowledge of the privilege and as to whether she had consulted a lawyer before answering the subpoena. Somewhat later in her testimony in answer to the same but differently couched question, the defendant denied ever having been a member of the party. Upon being asked by a Grand Juror why she had thus changed her tack the defendant answered: "Well, I felt I might as well get it over with."

 Certainly the government was not obliged to refrain from asking questions the answers to which might be incriminating. Similarly the defendant once having invoked the privilege it was not incumbent upon the government to assure itself that the defendant had the requisite knowledge of the privilege operation. No hard and fast rule regarding this phase of the law has developed in the federal courts, the test being whether all things considered the testimony in question was voluntarily given. See United States v. Block, 2 Cir., 1937, 88 F.2d 618. We think the record fails to indicate such coercion or overreaching as would justify an acquittal on this ground. The defendant energetically presses the applicability of United States v. Bell, C.C.W.D.Tenn. 1897, 81 F. 830. We cannot find here the fundamental unfairness which the court evidently saw in the situation presented before it.

Was there prejudicial error in the conduct of the trial on the part of the trial judge and government counsel?

As to the judge's conduct:

 The defendant contends that the trial judge participated in the examination of witnesses and the nature of that examination virtually cast him in the prosecutor's role and had a distinctly prejudicial effect. She has presented a tabulation which appears to demonstrate that the trial judge during the entire case asked more questions of witnesses than did government counsel, and further that almost 80 percent of the trial judge's questions were put to defendant's witnesses. Upon review of the record we conclude that the trial judge's participation in the examination

was not of such degree or nature as to be prejudicial. In so stating we are constrained to note, nevertheless, that trial judges should ever keep in mind the manifest dangers of over-participation in the examination and cross-examination of witnesses.

As to the conduct of the government counsel:

Defendant complains that the summation of counsel for the government was "inflammatory" to the extent that it was prejudicial; further, that he at one point commented on the failure of the defendant to testify. The latter contention is utterly without basis. It is true that government counsel might well have avoided some of the extravagant references which bordered close to flag-waving, but we cannot say that he did so to the extent proscribed in Viereck v. United States, 1943, 318 U.S. 236, 63 S.Ct. 561, 87 L.Ed. 734.

For the reasons stated the judgments of conviction will be reversed as to Counts 1, 2 and 3, and the cause remanded to the District Court with directions to enter judgments of acquittal with respect to Count 1 and Count 3 and that a new trial be had as to Count 2.