**UNITED STATES of America**
**v.**
**James LOWE, Appellant.**
**No. 11789.**

United States Court of Appeals Third Circuit.

Argued May 10, 1956.

Decided June 14, 1956.

John W. McGeehan, Jr., Newark, N. J., Max Mehler, Newark, N. J., of counsel (Anthony A. Calandra, Newark, N. J., on the brief), for appellant.

Pierre P. Garven, Asst. U. S. Atty., Newark, N. J. (Raymond Del Tufo, Jr., U. S. Atty., Hamilton F. Kean, Asst. U. S.

Atty., Newark, N. J., on the brief), for appellee.

Before MARIS, GOODRICH and KALODNER, Circuit Judges.

GOODRICH, Circuit Judge.

The defendant appeals from a judgment of conviction in a prosecution brought under the Hobbs Act, 18 U.S.C. § 1951 (1952).[1] It is not claimed that there is not sufficient evidence to sustain the conviction. But it is claimed that there were errors at the trial of such nature that the accused is entitled to a new trial. While the appellant presents five questions in his list of alleged grounds for reversal, it will be convenient, in discussing the case, to combine some of them.

The appellant devotes a great deal of argument to the fact that the United States Attorney was permitted to question the defendant when he took the stand concerning his sources of income for the years 1951 and 1952. He makes the argument that the court thus permitted cross-examination to go beyond the scope of the direct examination and, under the federal rule, this was erroneous and a basis for reversal. We do not stop to comment upon the desirability of the alleged restriction in the federal rule except to note that it has been criticized by writers of eminence in the field.[2] Our point here is that in this case the rule was inapplicable.

The question of the defendant's financial standing was not introduced into the case by the government but by the defendant himself. The principal witness for the prosecution, a man named C. Hubert Gragg, was alleged to have paid the money secured by extortion. It was brought out in cross-examination that Gragg's part in the performance of the contract for building a pipe line was one that was highly profitable to him. When the defense opened, defendant's counsel said at the very start, that Mr. Lowe "is not a man who lives in a fifty thousand dollar house," and traced Lowe's personal history from his birth on a farm to a worker in a steel mill, as a structural iron worker doing "that very hazardous work" and then into his work representing labor unions. On direct examination, the defendant was asked about his house and his personal history. Also, it was brought out that while Lowe held positions in various union organizations his only salary came from a job as business agent for Ironworkers, Local No. 11. When he was asked by the prosecution whether he had any other income he was very evasive and at one point, being pressed, denied further income. Then the cross-examiner pressed certain specific instances on him and he admitted the receipt of the income items brought to his attention.

There are two equally conclusive answers to an objection to the examination along this line. One is that the defense itself had opened up the subject. It not only presented Lowe in argument as a

1. "(a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.

"(b) As used in this section—
* * * * *
"(2) The term 'extortion' means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.

"(3) The term 'commerce' means commerce within the District of Columbia, or any Territory or Possession of the United States; all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction."

2. 6 Wigmore, Evidence § 1888, p. 543 (3d ed. 1940); 1 Morgan, Basic Problems of Evidence 60 (1954); McCormick, Evidence § 27 (1954).

humble citizen and minimized his income, but also expressly brought out the fact that while he owned a two and a half story house he lived in only one floor and rented out the rest. The prosecution met this by showing income not only from his salary but "commissions," dividends from stock and profits from stock transactions. When a party opens up a subject, even though it may not be strictly relevant to the case, he cannot complain on appeal if the other side gives him a Rowland for his Oliver.[3]

All of this was brought out on cross-examination and was within the discretion which the trial judge has under the federal rule.[4]

■ The second reason why there was no error in the exploration of this subject is that it was cross-examination. When a defendant takes the stand in a criminal case he is subject to cross-examination as any other witness is. No authority needs to be cited for the proposition that one of the purposes of cross-examination is to test the credibility of the witness and, subject to the judge's control, that cross-examination may go rather far. The scope of direct examination poses no limitation in this respect.[5] Here the cross-examination was very material in testing the credibility of the defendant. See United States v. Pagano, 2 Cir., 1955, 224 F.2d 682, 685, certiorari denied 350 U.S. 884, 76 S.Ct. 137.

■ What has been said already takes care of the appellant's objections to the admission into evidence of his income tax returns for the years 1951 and 1952. The defendant as a witness had been questioned about items in the returns. They had been in the hands of the prosecutor and also in the hands of the defendant to examine them on the stand and answer questions concerning certain items. The admission of the documents into evidence really gave no more information to the jury than it had already received from the oral examination of the defendant as a witness. The suggestion now made that their introduction suggested that the defendant had committed other crimes is fanciful. We quite recognize the rule that when a witness is cross-examined on a collateral matter introduced for impeachment purposes the answer the witness gives ordinarily ends introduction of testimony on that point.[6] But here the introduction of the returns did not contradict the witness for he had admitted in his oral examination all the points that the returns showed.

■ The next problem raised by the appellant presents a question of law. He complains of the original instructions by the court and certain supplemental instructions given because these instructions did not leave to the jury the determination of whether the alleged conduct by the defendant affected commerce or the movement of any article in commerce. There was testimony in the case concerning the part which this piece of pipe line played in a gas distribution system which had its origin in Texas. There was testimony to the effect that this particular piece of line was connected to a meter which was part of the main line from the source of supply. The trial judge mentioned these statements to the jury and said "if believed by you beyond a reasonable doubt [they] satisfy the necessary federal jurisdictional element of interstate commerce under the law under which this indictment is drawn." In this instruction the judge was following Hulahan v. United States, 8 Cir., 1954, 214 F.

---

3. 1 Wigmore, Evidence § 15 (3d ed. 1940); Bradley v. Adams Express Co., 6 Cir., 1937, 89 F.2d 641, certiorari denied, 302 U.S. 698, 58 S.Ct. 17, 82 L.Ed. 539; Stentor Electric Mfg. Co. v. Klaxon Co., 3 Cir., 1940, 115 F.2d 268, 274, reversed on other grounds, 1941, 313 U.S. 487, 61 S. Ct. 1020, 85 L.Ed. 1477; United States v. Regents of New Mexico School of Mines, 10 Cir., 1950, 185 F.2d 389.

4. 6 Wigmore, Evidence § 1890 (3d ed. 1940); McCormick, Evidence § 24 (1954).

5. 6 Wigmore, Evidence § 1891 (3d ed. 1940); 1 Morgan, Basic Problems of Evidence 62 (1954); McCormick, Evidence § 22 (1954).

6. United States v. Klass, 3 Cir., 1948, 166 F.2d 373, 376.

2d 441, 445, certiorari denied 348 U.S. 856, 75 S.Ct. 81, 99 L.Ed. 675, as closely as though he had had the report on the desk before him when he charged the jury. We have no doubt that he was right. The position taken in the Hulahan case is strengthened by the decision of the Second Circuit in United States v. Varlack, 1955, 225 F.2d 665, 670.

■■■ It appears in the testimony that the appeal is from the second trial of this case and that the first trial resulted in disagreement among the jury. The appellant's last complaint has to do with questions concerning that trial. The defendant was asked whether in the former trial he called as a witness a man named William H. Payne. When a negative answer was given he was asked why. His answer to that was that the question was one for his lawyer. In the summation the prosecutor commented on the failure to call Payne in the first trial.

This is really not a very important point. The rule is well known that as a general proposition when one fails to call a witness who might have something relevant to say about his case an unfavorable inference can be urged against the one who fails to call him.[7] The idea is that if one does not call a person who knows something about the matter it is because he is afraid that what the possible witness will say is something that will not help his case.

Payne had died before the second trial occurred. He was in court during the first trial but neither side called him. Payne was married to a niece of the defendant Lowe. She was his "favorite niece" and Lowe had testified that he had advanced $15,000. to Payne to get him into the lumber business. It was through the lumber company with which Payne was connected that the alleged extortion money was paid.

We think it inferable that neither side called Payne at the first trial because they could not depend upon what he might say. In any event, we think the question

which brought out the fact that Payne was not called and Lowe's lawyer would have to be asked for the reason was not an important element in this trial and we cannot conceive how it could possibly be a ground for reversal.

The trial was a fair one. Counsel on each side knew his business. The case was submitted to the jury under instructions so explicit that its members could not fail to understand them. The issues which the jury faced were issues of fact where a decision had to be made between the categorical assertions on one side and equally categorical denials on the other. Fact conclusions were resolved in favor of the prosecution.

The judgment will be affirmed.

---

7. United States v. Walker Co., 3 Cir., 1945, 152 F.2d 612.