269 F.2d 897
 Herbert Frederick KORHOLZ, Appellant,
v.
UNITED STATES of America, Appellee.
Fred William BIERIG, Appellant,
v.
UNITED STATES of America, Appellee.
ROCK WOOL INSULATING COMPANY, also known as Rock Wool
Insulation Corporation, a corporation, Appellant,
v.
UNITED STATES of America, Appellee.
 Nos. 6088-6090.
 United States Court of Appeals Tenth Circuit.
 Aug. 20, 1959, Rehearing Denied Sept. 18, 1959.
 
 Vasco G. Seavy, Sr., Pueblo, Colo. (Charles E. Grover and Anthony F. Zarlengo, Denver, Colo., on the brief), for appellants Herbert Frederick Korholz and Rock Wool Insulating Co.
 John J. Gibbons, Denver, Colo., for appellant Fred Willian Bierig.
 Robert S. Wham, Asst. U.S. Atty., Denver, Colo. (Donald E. Kelley, U.S. Atty., Denver, Colo., on the brief), for appellee.
 Before BRATTON, Chief Judge, and PHILLIPS and LEWIS, Circuit Judges.
 LEWIS, Circuit Judge.
 
 
 1
 These consolidated cases present the appeals of a union official, a corporate employer, and its president, each having been convicted of a violation of 29 U.S.C.A. 186.[1] Claim is made by appellants that the indictment is basically faulty, that the evidence is insufficient to establish the elements of the statutory offense, and that the court erred in rulings as to the admissibility of evidence and in refusing two tendered instructions.
 
 
 2
 The indictment was in two counts. Count one charged that from about June 15, 1954 to April 17, 1956, Rock Wool Insulating Company did wilfully and unlawfully pay a total of $2,305 in money to Bierig who was then a representative of that company's employees and that Korholz, the company president, did wilfully aid and abet in the commission of the offense. Count two accused Bierig of the unlawful and wilful receipt and acceptance of the prohibited payment. The use of the words 'a total of $2,305.00 in money' premise appellant's principal contentions urging reversal and must be considered with an understanding of the factual background of the transaction.
 
 
 3
 On August 6, 1953, Bierig borrowed $2,000 from the Arkansas Valley Bank of Pueblo, Colorado, the indebtedness being evidenced by his promissory note due in 180 days and individually guaranteed by Korholz by separate instrument.[2] On the due date, Bierig paid the interest and $500 upon the principal and executed a renewal note for $1,515 representing the balance due under the first note with interest charged in advance. The note was thereafter renewed ten times, Bierig paying the interest but making no further payment upon principal. On one occasion in 1954 the principal amount was increased by $800 which Bierig received from the bank. The note was ultimately discharged on April 17, 1956, after a series of principal payments credited by the bank, in accordance with authorization from Korholz, through debiting an account owned by the Korholz family. In one instance only, a direct debit was made against the Rock Wool company account but in each other instance Rock Wool reimbursed the Korholz family account. Rock Wool's books reflected these payments as advances to its president, Korholz, until an accounting adjustment made in 1957 entered the amounts as expenses for labor relations service.
 
 
 4
 Appellants' complaint as to the indictment lies in the use of the words of aggregation describing payment made by Rock Wool and accepted by Bierig, 'a total of $2,305.00.' The fact that the words were used to signify numerous transactions of delivery and receipt, they urge, is borne out by evidence that the company made thirteen separate payments on eight different notes. Since proof of any one of these transactions would be sufficient to show a violation of that section of Taft-Hartley Act cited above, they contend the indictment is duplicitous and permits the jury to arrive at a verdict of conviction even though the jurors connot agree as to the fact of any particular transaction. Inductive reasoning leads appellants to assert that Rule 8, Federal Rules of Criminal Procedure, 18 U.S.C.A., and the cases of Ebeling v. Morgan, 237 U.S. 625, 35 S.Ct 710, 59 L.Ed. 1151, and Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306, require the prosecution to set forth each act in a separate count and prosecute it as a separate offense although concededly such could be done by one indictment and one trial. The Ebeling case permitted the prosecution and imposition of sentence on each of seven counts which separately alleged the cutting of a different mail bag, although all the destruction was a part of the same transaction. The Blockburger case was a narcotics case which approved of the prosecution as separate offenses of two sales of narcotics to the same buyer within a short period of time. But compare these cases with the recent case of Bell v. United States, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905, where it was held that the transportation of two women for immoral purposes constituted but one punishable offense.
 
 
 5
 Whether or not appellants could be charged, convicted and sentenced for thirteen violations of 29 U.S.C.A. 186 is of little consequence in the present case for the question is not raised by the posture of the case. The charge here was single, a violation of the Taft-Hartley Act, although the indictment undoubtedly proposed proof of guilt by a series of acts. The situation is analogous to that in Crain v. United States, 162 U.S. 625, 16 S.Ct. 952, 40 L.Ed. 1097, where it is said at page 636 of 162 U.S., at page 955 of 16 S.Ct.:
 
 
 6
 'We are of opinion that the objection to the second count upon the ground of duplicity was properly overruled. The evil that congress intended to reach was the obtaining of money from the United States by means of fraudulent deeds, powers of attorneys, orders, certificates, receipts, or other writings. The statute was directed against certain defined modes for accomplishing a general object, and declaring that the doing of either one of several specified things, each having reference to that object, should be punished by imprisonment at hard labor * * *. We perceive no sound reason why the doing of the prohibited thing in each and all of the prohibited modes may not be charged in one count, so that there may be a verdict of guilty upon proof that the accused had done any one of the things constituting a substantive crime under the statute. And this is a view altogether favorable to an accused who pleads not guilty to the charge contained in a single count, for a judgment on a general verdict of guilty upon that count will be a bar to any further prosecution in respect of any of the matters embraced by it.'
 
 
 7
 This rule has been codified in Rule 7(c) of the Federal Rules of Criminal Procedure: 'It may be alleged in a single count that the means by which the defendant committed the offense are unknown or that he committed it by one or more specified means.' The cases reveal that a complaint of duplicity is rarely made where but a single statutory prohibition is involved since the effect of joining several violations as one redounds to the benefit of defendant. As was said in Mellor v. United States, 8 Cir., 160 F.2d 757, 762:
 
 
 8
 'We know of no rule that renders an indictment duplicitous because it charges as one joint offense a single completed transaction insteas of charging in separate counts as many offenses as the evidence at the trial might conceivably sustain.'
 
 
 9
 See also Hanf v. United States, 8 Cir., 235 F.2d 710.
 
 
 10
 Since we reject appellants' contention that the indictment is basically faulty we must similarly reject several supplemental claims. The trial court committed no error in admitting evidence as to all payments made to the bank and in rejecting appellants' proposed instruction that the jury must limit its consideration to only the first of the series of payments made. The defendants were charged with but a single offense and the government had no burden nor duty to limit its proof to or elect to stand upon a single transaction.
 
 
 11
 Next, appellants point out that the indictment charges Rock Wool with the payment and Bierig with the acceptance of '2,305.00 in money' and that the proof shows the money was paid to and received by the bank in discharge of Bierig's obligation. This, appellants assert, is a fatal variance. It is conceded that the defendants could have been charged with having given and received 'something of value' under Section 186, but it is insisted that having framed its charge in terms of money, the government is bound to substantiate that charge with a showing of an actual exchange of money.
 
 
 12
 In our view, there is no variance. Although the money was taken from the employer's account and credited to Bierig's obligation by the bank through a series of transactions involving a third account, the gist of the offense was the payment of money in violation of the statute. The record shows that the bank acted as agent for both parties with their complete approval and the effect of the transaction was not altered by the peculiarities of their arrangement. The mere failure of the indictment to set forth each step of the transfer of funds does not create a fatal variance. Cooper v. United States, 58 App.D.C. 325, 30 F.2d 567; Peck v. United States, 7 Cir., 65 F.2d 59. Cf. Madsen v. United States, 10 Cir., 165 F.2d 507; United States v. Cox, 7 Cir., 147 F.2d 587.
 
 
 13
 The indictment alleged that Local Union No. 146 was representative for collective bargaining purposes of certain employees of Rock Wool Insulating Company during the period from June 15, 1954 to April 17, 1956, and that Fred Bierig represented said employees in his capacity of officer of Local Union No. 146. Appellants claim that the evidence fails to substantiate this allegation and further claim that there is no evidence to show, if such was the fact, that the company or Korholz knew during that time that the union represented any company employees.
 
 
 14
 The evidence does show that certain truck drivers had affiliated with Local No. 146 prior to the stipulated date of N.L.R.B. election, August 31, 1955, and during the period named in the indictment. But the drivers testified that they knew at the time of joining the local that they were not a majority of the employees of Rock Wool Insulating Company and that the union was not in a position ot bargain, under N.L.R.B. authority, without a majority. One driver testified that it was his understanding that the purpose of signing up was to get a union contract for the drivers alone, without regard to the status of the production employees. The witnesses stated that prior to August 31, 1955, they knew of no bargaining between union and company with reference to wages, hours, or conditions. The application cards which they signed, however, designated the union as their representative for collective bargaining.
 
 
 15
 The meaning of the term 'representative' as used in Section 186 has been considered in only a limited number of cases, but the case of United States v. Ryan, 350 U.S. 299, 76 S.Ct. 400, 100 L.Ed. 335, has positively negatived appellants' theory that the only payments proscribed by this section are those made to an exclusive bargaining representative.
 
 
 16
 In Brennan v. United States, 8 Cir., 240 F.2d 253, 264, certiorari denied 353 U.S. 931, 77 S.Ct. 718, 1 L.Ed.2d 723, the Court of Appeals endorsed an instruction defining 'representative' as including any person who is empowered or authorized in any way to represent an employee or employees in dealing with the employer in matters relating to wages, hours, or working conditions and stating:
 
 
 17
 'If a person be so authorized to act it is not necessary that he actually exercise all or any of the powers conferred upon him. Representative as used in this Act may also include one who is empowered, authorized or designated by any employee or employees to represent any employee or employees in any negotiation with their employer for the establishment of a new union and its recognition by such employer as a representative of said employees in any matter related to their wages, hours, or working conditions.'
 
 
 18
 Regardless of the fact that the union did not have sufficient power through representation to negotiate with the employer under statutory authority, the union was authorized by at least three of the employees to act in their behalf in matters concerning their employment.
 
 
 19
 Mr. Korholz had dealt with Mr. Bierig over a period of time as a union officer, accepting his services in attempting to increase sales of Rock Wool Insulating Company at union construction jobs and discussing the possibility of the organization of the company employees. One of the drivers testified that he asked Mr. Korholz if he would approve of the employees joining the union and was told that it didn't matter one way or another to the company. Finally, the payments on the note were charged on the company's books as labor relations expenses. Although there is no direct evidence showing that any officer or employee had knowledge of the contents of the drivers' union application cards which appointed the union as their representative, the circumstantial evidence is sufficient to permit the jury to infer that the company made the payments on the Bierig notes because Mr. Bierig was a representative of labor in its plant.
 
 
 20
 Appellants also contend that since Mr. Korholz by reason of his continuing guarantee was obligated to pay on the Bierig note if Mr. Bierig failed to do so, the payments were made in discharge of that obligation rather than as a gift to influence Bierig as a labor representative. Further appellant Korholz charges that since the transaction was entered at a time when Bierig did not represent employees of Rock Wool Insulating Company, the application of the statute as to him creates an ex post facto situation violative of his constitutional rights. Aside from the evidence which might be construed as demonstrating a plan to avoid the interdiction of the statute, Korholz is not charged as an employer but as aiding and abetting the employer in making the payments. The dereliction was in causing the employer to make the payments on Bierig's behalf and his actual motive was submitted to the jury for consideration by the court's instruction:
 
 
 21
 'Before there can be a conviction in this case it must be established beyond a reasonable doubt that acts charged in the indictment and in violation of the statute were done knowingly and wilfully. Now, the word 'knowingly' as used in the indictment, as used in these instructions means intentionally and with an awareness and consciousness of what one is doing. Now, the word 'wilfully' as used in the statute and in the indictment and in these instructions connotes an intentional violation of the law, and you are advised, ladies and gentlemen of the jury, that a defendant who actually does violate the provisions of law here involved would not be guilty of a criminal offense unless he is either conscious of the fact that what he is doing constitutes a violation of the law or unless he wholly disregards the law and pursues a course without making any reasonable effort to determine whether the plan he is following would constitute a violation of the law or not.'
 
 
 22
 Finally, appellants urge error in the court's refusal to give their tendered instruction on wilfulness which emphasized the criminal intent aspect of that word, requiring the jury to acquit unless they found that the payments were made with a bad purpose or motive and without justifiable excuse. The distinction between the two views is set forth in United States v. Illinois Cent. R. Co., 303 U.S. 239, at page 242, 58 S.Ct. 533, 535, 82 L.Ed. 773:
 
 
 23
 'In statutes denouncing offenses involving turpitude, 'willfully' is generally used to mean with evil purpose, criminal intent or the like. But in those denouncing acts not in themselves wrong, the word is often used without any such implication. Our opinion in United States v. Murdock, 290 U.S. 389, 394 (54 S.Ct. 223, 225, 78 L.Ed. 381) shows that it often denotes that which is 'intentional, or knowing, or voluntary, as distinguished from accidental,' and that it is employed to characterize 'conduct marked by careless disregard whether or not one has the right so to act. * * *."
 
 
 24
 The crime charged is one of those not wrong in itself but prohibited by statute to protect labor relations from anticipated corruption. The statute was described in United States v. Ryan, supra, as malum prohibitum. Thus, it is clear that the language of the instruction was accurate in its definition of 'wilfully' as used in the statute.
 
 
 25
 Affirmed.
 
 
 
 [1]
 29 U.S.C.A. 186: '(a) It shall be unlawful for any employer to pay or deliver, or to agree to pay or deliver, any money or other thing of value to any representative of any of his employees who are employed in an industry affecting commerce
 '(b) It shall be unlawful for any representative of any employees who are employed in an industry affecting commerce to receive or accept, or to agree to receive or accept, from the employer of such employees any money or other thing of value. * * *'
 
 
 [2]
 The guarantee provided:
 '* * * I, * * * hereby promise to pay to the Bank any and all sums of money which the said Bank may at any time loan or advance to the Borrower.
 'This agreement and guarantee applies to the payment of all notes and obligations made by the Borrower to the Bank, and any renewals thereof or continuances, whether in whole or in part. This is a continuing guarantee.'