**UNITED STATES of America**
v.
**Dominic ALAIMO.**
**Crim. No. 13225.**

United States District Court
M. D. Pennsylvania.
Feb. 9, 1961.

Daniel H. Jenkins, U. S. Atty., Phillip H. Williams, Asst. U. S. Atty., Scranton, Pa., Thomas J. Brennan, Special U. S. Atty., Dept. of Justice, Washington, D. C., for the Government.

Joseph M. McDade, Henry C. McGrath, Scranton, Pa., for defendant.

JOHN W. MURPHY, Chief Judge.

Defendant found guilty by verdict of a jury on thirty-four counts of violating § 302(b) (d) of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 186 (b) (d),[1] moves for judgment of acquittal or a new trial.[2] In support thereof defendant asserts failure of proof, errors in ruling upon evidence, in the conduct of the trial, and in the charge of the court.

■■■ A person who is a representative of employees employed in an industry affecting commerce may be held to have wilfully violated § 186(b) upon a showing that he received or accepted money from the employer of such employee .(or from the agent of such employer) with knowledge (1) that he was receiving or accepting money, and (2) that the person who was giving him the money was an employer of employees (or the agent of such employer) that he represented. United States v. Lavery, supra, 161 F.Supp. at page 286, and see United States v. Ryan, supra, 350 U.S. at page 305, 76 S.Ct. at page 404; United States v. Ryan, 2 Cir., 1956, 232 F.2d 481, 483.

"The chief, if not only, purpose of the section was to put a stop to practices that, if unchecked, might impair the impartiality of union 'representatives'," United States v. Ryan, supra, 232 F.2d at page 483; "to prevent employers from tampering with the loyalty of union officials, and disloyal union officials from levying tribute upon employers," L. Hand dissenting in United States v. Ryan, 2 Cir., 1955, 225 F.2d 417, at page 426, and see United States v. Ryan, supra, 350 U.S. at pages 305–306, 76 S.Ct. at pages 404–405; Arroyo v. United States, 1 Cir., 1958, 256 F.2d 549, 551, reversed on other grounds 359 U.S. 419, 79 S.Ct. 864, 3 L.Ed.2d 915, as to "shaking down the employer"; United States v. Pecora, 3 Cir., 1959, 267 F.2d 512, as to buying labor peace.

Taking that view of the evidence, including all inferences reasonably deducible therefrom in favor of the verdict, see Glasser v. United States, 1942, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680, there was substantial competent evidence that on thirty-four separate and distinct occasions,[3] defendant, a Committeeman of Local No. 8005, United Mine Workers of America,[4] and, as such, a "representa-

---

1. "(b) It shall be unlawful for any representative of any employees who are employed in an industry affecting commerce to receive or accept, or to agree to receive or accept, from the employer of such employees any money or other thing of value * * *. (d) Any person who willfully violates any of the provisions of this section shall, upon conviction thereof, be guilty of a misdemeanor * * *."

2. Defendant's motion in arrest of judgment for failure to state an offense and multiplicity of offenses is without merit. See United States v. Lavery, D.C.M.D. Pa.1958, 161 F.Supp. 283, and our memorandum opinion denying defendant's pretrial motion to dismiss; Blockburger v. United States, 1932, 284 U.S. 299, 52 S. Ct. 180, 76 L.Ed. 306; Morgan v. Devine, 1915, 237 U.S. 632, 640, 35 S.Ct. 712, 59 L.Ed. 1153; In re Snow, 1887, 120 U.S. 274, 286, 7 S.Ct. 556, 30 L.Ed. 658; Newman v. United States, 6 Cir., 1954, 212 F.2d 450, 452; Sherman v. United States, 9 Cir., 1957, 241 F.2d 329, 334, and see United States v. Ryan, 1956, 350 U.S. 299, 76 S.Ct. 400, 100 L.Ed. 335. Defendant's reliance on United States v. Universal C. I. T. Credit Corp., 1952, 344 U.S. 218, 73 S.Ct. 227, 97 L. Ed. 260, is misplaced; cf. Kobey v. United States, 9 Cir., 1953, 208 F.2d 583, at page 595.

3. Each two-week pay period from August 1, 1957, to December 31, 1958, inclusive.

4. Authorized representative of all employees as to working conditions, hours of work, rates of pay, etc. Defendant was unanimously elected and duly qualified as one of three to represent his fellow employees for a period of two years. Although the Committee could effectively act only as a unit, defendant was assigned to investigate grievances in certain areas and received a salary and expenses from the Local for doing so. See Korholz v. United States, 10 Cir., 1959, 269 F.2d 897, 902.

tive"[5] of employees of the Knox Coal Company, an industry affecting commerce,[6] received and accepted various sums of money[7] from Knox, all in violation of the provisions and purposes of the Act.

Under § 302(c) of the Act, 29 U.S.C.A. § 186(c) the broad provision of subsection (b) is made inapplicable " * * * (1) with respect to any money or other thing of value payable by an employer to any representative who is an employee or former employee of such employer, as compensation for, or by reason of, his services as an employee of such employer; * * * * "[8]

" * * * payments that subsection (c) covers would fall within (a) and (b) except for the exception." Mechanical Contractors Ass'n of Philadelphia, Inc. v. Local Union 420, supra, 265 F.2d at page 611.

Arroyo v. United States, supra, 256 F.2d at page 552, teaches "a representative of employees would be guilty under subsection (b) if he received money or other thing of value from an employer unless the receipt were covered in the exceptions stated in subsection (c)"; Arroyo v. United States, supra, 359 U.S. at page 424, 79 S.Ct. at page 867, that both employer and employee would be guilty if the payment were ostensibly made for one of the lawful purposes specified in § 302(c), Id. 186(c), if both knew that such a purpose was merely a sham.

■ It is incumbent upon one who relies upon an exception to set it up and establish it. McKelvey v. United States, 1922, 260 U.S. 353, 357, 43 S.Ct..132, 67 L.Ed. 301; Carnahan v. United States, 8 Cir., 1929, 35 F.2d 96, 99, 67 A.L.R. 1035; Evans v. United States, 1894, 153

---

5. " * * * any person authorized by * * * employees to act for them in dealings with their employers," United States v. Ryan, supra, 350 U.S. at page 302, 76 S.Ct. at page 403; " * * * a narrow reading of the term 'representative' would substantially defeat the congressional purpose," Id., 350 U.S. 304, 76 S.Ct. at page 404; " * * * any person * * * authorized * * * directly or indirectly * * * it is not necessary that he actually exercise all or any of the powers conferred upon him'," Brennan v. United States, 8 Cir., 1957, 240 F.2d 253, 264, and see Mechanical Contractors Ass'n of Philadelphia, Inc. v. Local Union 420, 3 Cir., 1959, 265 F.2d 607, 611; United States v. Pecora, supra, 267 F.2d at page 515; Korholz v. United States, supra, 269 F.2d at page 902.

6. Knox, under a lease agreement, mined and delivered to Pennsylvania Coal Company, coal, a substantial portion of which after being processed went into interstate commerce. See and cf. N. L. R. B. v. Denver Bldg. & Const. Trades Council, 1951, 341 U.S. 675, 684, 71 S.Ct. 943, 95 L.Ed. 1284; N. L. R. B. v. Suburban Lumber Co., 3 Cir., 1941, 121 F.2d 829, 831–832. The court, not the jury, determines whether the government's evidence, if believed, established that interstate commerce was affected. United States v. Lowe, 3 Cir., 1956, 234 F. 2d 919, 922; Hulahan v. United States,

8 Cir., 1954, 214 F.2d 441, 446; United States v. Green, 7 Cir., 1957, 246 F.2d 155, 160–161.

7. In the aggregate $7,651.88 proved by Knox business records, 28 U.S.C.A. § 1732; Arena v. United States, 9 Cir., 1955, 226 F.2d 227; Palmer v. Hoffman, 1943, 318 U.S. 109, 63 S.Ct. 477, 87 L. Ed. 645; United States v. Palmiotti, 2 Cir., 1958, 254 F.2d 491, 497; Bodnar v. United States, 6 Cir., 1957, 248 F. 2d 481; United States v. Scoblick, D.C. M.D.Pa.1954, 124 F.Supp. 881, 885, 886, affirmed 3 Cir., 225 F.2d 779; United States v. Stoehr, D.C.M.D.Pa.1951, 100 F.Supp. 143, 163, affirmed 3 Cir., 196 F.2d 276, 33 A.L.R.2d 836; see and cf. United States v. Conquest, D.C.E.D.Pa. 1957, 148 F.Supp. 62, 66. On some occasions two checks, on others one check; all drawn to defendant's order, endorsed and cashed by him. Payroll sheets and time books sometimes listed defendant by name, sometimes by initials, sometimes showing an occupation, at others not; sometimes showing hours worked, others not, e. g. as a motorman receiving travel time when he did not actually work as such.

8. And four other exceptions not herein applicable. See and cf. Arroyo v. United States, supra, 359 U.S. at page 420, 79 S.Ct. at page 865. Mutuality of guilt is not required. Id., 359 U.S. 423, 79 S. Ct. 867. Here the employer was separately indicted.

U.S. 584, 590, 14 S.Ct. 934, 38 L.Ed. 830; Stokes v. United States, 1895, 157 U.S. 187, 191, 15 S.Ct. 617, 39 L.Ed. 667; United States v. Mertine, D.C.D.N.J. 1946, 64 F.Supp. 792, 795; 27 Am.Jur. Indictments and Informations, § 107, and see IX Wigmore on Evidence, 3rd Ed., §§ 2511, 2512(a) and cf. Id. § 2497.

██ Without weighing the evidence or determining the credibility of witnesses, see Glasser v. United States, supra, 315 U.S. at page 80, 62 S.Ct. at page 469, suffice it to say there was sufficient evidence from which a jury might, and we may assume did, find that the payments accepted and received by defendant were not received or accepted as compensation for services rendered as an employee.

In view of the foregoing, defendant's motion for judgment of acquittal will be denied.

As to the motion for new trial—

██ Defendant's unsupported request for inspection of the Grand Jury minutes of testimony of witnesses who had previously testified was properly denied. See Pittsburgh Plate Glass Co. v. United States, 4 Cir., 1958, 260 F.2d 397, 402–404, affirmed 1959, 360 U.S. 395, 79 S.Ct. 1237, 3 L.Ed.2d 1323.

 Defendant himself did not testify but having on cross examination and through other witnesses attempted to show performance of services for which he was entitled to compensation, the government, in rebuttal, over objection,[9] was permitted to show that defendant, testifying on January 9, 1958, before a Federal Grand Jury, stated[10] he was in the dress business since 1953 and that he ceased working in the mines two years previously. Such testimony was clearly admissible, see VIII Wigmore, op. cit. supra, § 2363, p. 727; United States v. Johnson, D.C.M.D.Pa.1947, 76 F.Supp. 542, 548, affirmed 3 Cir., 165 F.2d 42, 45–46; Metzler v. United States, 9 Cir., 1933, 64 F.2d 203, 206; United States v. Miranti, 2 Cir., 1958, 253 F.2d 135, 138; United States v. Grunewald, D.C.S.D.N.Y.1958, 164 F.Supp. 644, 646. Its significance is at once apparent when compared with the period covered in the indictment, i. e., from August 15, 1957, to December 31, 1958.

After some intervening questions which defendant, asserting the privilege against self-incrimination, declined to answer, defendant reiterated that he had worked in the mines until 1956 and made other admissions.[11]

On the government's side, on direct, there was abundant evidence of his union membership, his being a committeeman, and receiving a salary as such.[12] The additional evidence in that regard was therefore at best cumulative. See and cf. United States v. Socony-Vacuum Oil Co., 1940, 310 U.S. 150, 235, 60 S.Ct. 811, 84 L.Ed. 1129; United States v. Crescent Amusement Co., 1944, 323 U.S. 173, 184,

---

9. The order of proof lies within the sound discretion of the court. United States v. Stoehr, supra, 100 F.Supp. at page 159. As to rebuttal, see United States v. Montgomery, 3 Cir., 1942, 126 F.2d 151, 153; United States v. Maggio, 3 Cir., 1942, 126 F.2d 155, 158; Goldsby v. United States, 1895, 160 U.S. 70, 74, 16 S.Ct. 216, 40 L.Ed. 343; United States v. Lieblich, 2 Cir., 1957, 246 F. 2d 890, 895; VI Wigmore, op. cit. supra, § 1873, pp. 510, 517.

 Defense counsel on cross examination attempted to show services were actually performed. See United States v. Lowe, supra, 234 F.2d at page 922; 1 Wigmore op. cit. supra, § 15; United States v. Brott, 2 Cir., 1959, 264 F.2d 433, 434, and cf. Shields v. United States, 3 Cir., 1927, 17 F.2d 66, 69

10. N. T. 1925–1926.

11. During his last year in the mines he worked as a motorman. He did nothing else besides that. During World War II while working in the mines as an employee he was a member of Local No. 8005, United Mine Workers of America; he served as a member of the Mining Committee acting as a representative of his fellow employees, settling their complaints with management. For such services he received $15 to $25 a month. N. T. 1940–1941, 1943.

12. While listed as a motorman, there was evidence that he never acted as such; a suggestion that he was so listed for seniority purposes and evidence, although contradicted, that he was a watchman.

65 S.Ct. 254, 89 L.Ed. 160; 1 Wigmore, op. cit. supra, § 21, pp. 377, 378; F.R. Crim.P., Rule 52(a), 18 U.S.C.A.

 The government is not obliged to refrain from asking questions, answers to which may be incriminating. United States v. Neff, 3 Cir., 1954, 212 F.2d 297, 312. The amendment speaks of compulsion. If the witness desired the protection of the privilege against self-incrimination he "was required to claim it. United States v. Monia, 317 U.S. 424, 427 [63 S.Ct. 409, 410, 87 L.Ed. 376] (1943). The privilege 'is deemed waived unless invoked.' United States v. Murdock, 284 U.S. 141, 148 [52 S.Ct. 63, 64, 76 L.Ed. 210] (1931)." Rogers v. United States, 1951, 340 U.S. 367, 370–371, 71 S.Ct. 438, 440, 95 L.Ed. 344.

 Disclosure of a fact waives the privilege against self-incrimination as to details. Id., 340 U.S. at page 373, 71 S.Ct. at page 442; United States v. St. Pierre, 2 Cir., 1942, 132 F.2d 837, 838–840, 147 A.L.R. 240. "Requiring full disclosure of details after a witness freely testifies as to a criminating fact does not rest upon a further 'waiver' of the privilege against self-incrimination." Rogers v. United States, supra, 340 U.S. at page 374, 71 S.Ct. at page 442.

 Defendant argues that his Grand Jury testimony was coerced and therefore inadmissible. No hard and fast rule regarding this phase of the law has developed in the federal courts. The test is whether, all things considered, the testimony in question was voluntarily given. United States v. Neff, supra, 212 F.2d at page 312; United States v. Block, 2 Cir., 1937, 88 F.2d 618.

Defendant, without counsel,[13] in response to a subpoena, testified before a Special Grand Jury in the Southern District of New York, inquiring into the affair at Apalachin.[14] He had a duty to attend and testify. Blair v. United States, 1919, 250 U.S. 273, 280–281, 39 S.Ct. 468, 63 L.Ed. 979. Apart from the right against self-incrimination, a witness may not set limits to the investigation the grand jury may conduct. Id., 250 U.S. at page 282, 39 S.Ct. at page 471. After being advised as to his constitutional right against self-incrimination,[15] defendant freely and voluntarily stated he had been in the dress business since 1953; that he ceased working in the mines about 1956; and that he had since had no other employment or substantial source of income.

 As to the other admissions (see Note 11, supra), a short answer would be that the evidence was cumulative, its receipt harmless, and that they added only details. To remove any doubt, we think they were freely and voluntarily given and therefore otherwise admissible.[16]

13. See United States v. Scully, 2 Cir., 1955, 225 F.2d 113, 116, and see Costello v. United States, 1956, 350 U.S. 359, 362, 76 S.Ct. 406, 100 L.Ed. 397; United States v. Gilboy, D.C.M.D.Pa.1958, 160 F.Supp. 442, 459–460.

14. See United States v. Bufalino, 2 Cir., 1960, 285 F.2d 408.

15. As to failure to warn that what he said may be used against him, see United States v. Cleary, 2 Cir., 1959, 265 F.2d 459, 462, note 5.

16. Defendant declined to answer any questions concerning Apalachin—whether he knew Joseph Barbara, one Sciandra, and membership in organizations. Although United States v. Neff, supra, 212 F.2d at page 312, teaches that once having invoked the privilege against self-incrimination, it was not incumbent upon the government to assure itself that defendant had the requisite knowledge of the privilege operation, here defendant was warned in clear terms. Non constat the statute of limitations had run, (see VIII Wigmore, op. cit. supra, § 2279(1), p. 460) as to possible military service in World War II, and defendant was advised that he could not refuse to answer a question merely because he did not want to answer it; that there must be a basis for his refusal, see Rogers v. United States, supra, 340 U.S. at page 373, 71 S.Ct. at page 442; Hoffman v. United States, 1951, 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118; United States v. Costello, 2 Cir., 1955, 222 F.2d 656, 661; In re Hitson, D.C.N.D.Cal. 1959, 177 F.Supp. 834, 838, and admonitions as to possible contempt proceedings, see Brown v. United States, 1959,

There was no error in government counsel asking a payroll clerk why defendant received two checks at the end of a single pay period and what such checks represented.

Evidence as to how Anthony Argo and Charles Piasecki—the other two committeemen—were paid was admissible to show the modus operandi, to show a course of action, negative accident and mistake. See and cf. United States v. Laurelli, D.C.M.D.Pa.1960, 187 F.Supp. 30, at page 33.

In our charge we read § 186(b) and stated the purposes of the legislation as indicated in United States v. Ryan, supra, 225 F.2d at page 426; 232 F.2d at page 483; 350 U.S. at pages 305–306, 76 S.Ct. at pages 404–405; Arroyo v. United States, supra, 256 F.2d at pages 551–552; United States v. Pecora, supra, 267 F.2d 512. See United States v. Hood, 1952,

359 U.S. 41, 49–50, 79 S.Ct. 539, 3 L. Ed.2d 609, and the need for telling the truth, avoiding delay, and cooperating, see and cf. United States v. Stayback, 3 Cir., 1954, 212 F.2d 313, 318, defendant refused to state what he did during World War II.

Upon defendant refusing until directed to answer whether he had been a member of a union, to name the union and the time of membership, Assistant United States Attorney Lynch stated: "*You are declining to answer questions that obviously could not * * * and you know they couldn't incriminate you of a Federal crime * * * you are thereby wasting the time of this Grand Jury.* That can be a contempt, which in itself is a crime. Do you understand that?"

Upon defendant, though directed, declining to answer and asking that the statement be repeated and explained, the following colloquy ensued:

By Mr. Lynch:

"Q. I said that *you are choosing to refuse to answer questions that are obviously non-incriminatory,* thereby wasting the time of this Grand Jury, and that could be a contempt, which is punishable as a crime; do you understand that? A. *Obvious to whom?*

"Q. *Obvious to you and obvious to everyone else.* Do you understand what I am telling you? A. *Not quite.*

"Q. You are being asked *innocuous* questions. You are refusing to answer questions and then answering the questions after direction."

Upon being told he was wasting the time of the Grand Jury, obstructing it in its function and that that could constitute contempt, which is punishable, defendant, when asked if he understood, made no response, then told the foreman he had not even heard what Mr. Lynch had said. When charged with seeking to obstruct and delay the work of the Grand Jury, defendant denied doing so, said he did not feel well and would like to go home; then agreed that he wanted to get it over with. He then proceeded to make the statements indicated in Note 11, supra. Not until questioned about details in the dress business and as to Apalachin did he again plead his right against self-incrimination.

Considering the part italicized, supra, in the context of 29 U.S.C.A. § 186(b) (d), was the Assistant United States Attorney or the defendant aware of the possibility of defendant's union membership being a possible link in a crime, i. e., a violation of § 186(b)? See and cf. Rogers v. United States, supra, 340 U.S. at pages 372, 373, 71 S.Ct. at page 442, "* * * the privilege against self-incrimination presupposes a real danger of legal detriment arising from the disclosure, petitioner cannot invoke the privilege where response to the specific question in issue here would not further incriminate her." United States v. St. Pierre, supra, 132 F.2d at page 838, "* * * it is settled in federal courts that a witness cannot be compelled to disclose anything that will 'tend' to incriminate him, whether or not the answer would be an admission of one of the constitutive elements of the crime," but cf. Rogers v. United States, supra, 340 U.S. at page 374, 71 S.Ct. at page 442; United States v. St. Pierre, supra, 132 F.2d at page 839, as to the duty of full disclosure of details, and Hoffman v. United States, supra, 341 U.S. at pages 486–487, 71 S.Ct. at page 818, "* * * this protection must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer. Mason v. United States, 244 U.S. 362, 365 [37 S.Ct. 621, 622, 61 L.Ed. 1198] (1917) * * * The trial judge in appraising the claim 'must be governed as much by his personal preception of the peculiarities of the case as by the facts actually in evidence'."

Since in our opinion defendant had no hesitancy in revealing the details, we think there was a waiver and the evidence admissible.

343 U.S. 148, 151, 72 S.Ct. 568, 96 L.Ed. 846; Boyce Motor Lines v. United States, 1952, 342 U.S. 337, 340, 72 S.Ct. 329, 330, 96 L.Ed. 367, "A criminal statute must be sufficiently definite to give notice of the required conduct to one who would avoid its penalties, and to guide the judge in its application and the lawyer in defending one charged with its violation. But few words possess the precision of mathematical symbols, most statutes must deal with untold and unforeseen variations in factual situations, and the practical necessities of discharging the business of government inevitably limit the specificity with which legislators can spell out prohibitions. Consequently, no more than a reasonable degree of certainty can be demanded. Nor is it unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line."

As to Bianchi v. United States, 8 Cir., 1955, 219 F.2d 182, at page 190, see and cf. United States v. Ryan, supra, 232 F.2d at page 483; Arroyo v. United States, supra, 256 F.2d at page 551; Rosenberg v. United States, 1953, 346 U.S. 273, 294, 73 S.Ct. 1152, 1163, 97 L.Ed. 1607, "Where Congress by more than one statute proscribes a private course of conduct, the Government may choose to invoke either applicable law."

■ We made it abundantly clear, N.T. 610, 628, 629, that the burden of proof was upon the government and that it never shifted throughout the trial. While defendant had the burden of coming forward to prove that the payments used came within the exception in § 186 (c) in the end the burden of proving guilt remained that of the government. See discussion at page 628, supra, and see McKelvey v. United States, supra, 260 U.S. 353, 43 S.Ct. 132, 67 L.Ed. 301; IX Wigmore, op. cit. supra, §§ 2511, 2512 (a), and cf. § 2497.

Reviewing the whole trial, placing each episode in its proper setting—see United States v. Kafes, 3 Cir., 1954, 214 F.2d 887; United States v. Stoehr, supra, 100 F.Supp. at page 164—the record leaves no doubt that the case was fairly tried and submitted to the jury in a clear, impartial and thorough charge as to both the facts and the law.

Defendant's motion in arrest of judgment, for judgment of acquittal and new trial will therefore be denied in an order filed herewith.